HOWARD INSURANCE COMPANY *against* HALSEY and others.

The right of grantees of lands encumbered by mortgage to have it satisfied by sale of the lands in the inverse order of their alienation, is an equitable and not a legal right, and the mortgagee when applied to for a release of a part of the mortgaged premises is not bound at his peril to ascertain whether any part thereof has been aliened. He must have sufficient notice to put him upon inquiry in order to require him to regard the equitable right.

The recording of a conveyance of a part of the land made subsequently to his mortgage, is not a constructive notice to him.

Neither is information obtained by a solicitor retained by him to foreclose the mortgage, because not acquired in reference to the same transaction.

But where the release in terms refers to a conveyance in which the premises conveyed are referred to as the lands of the grantee, the reference is constructive notice of the fact, to the same extent as if the conveyance referred to had been recited in the release.

Appeal from a decree made by the superior court of the city of New York upon a bill in equity for the foreclosure of a mortgage. The facts disclosed in the case were as follows.

On the 17th of April, 1837, Stephen A. Halsey and wife made their mortgage to the plaintiffs conveying two hundred and ninety-four acres of land in Westchester county, described by certain bounds, and as "all that part of the farm and premises lying on the easterly and southerly side of the post road which were heretofore conveyed to the said Stephen A. Halsey by Vanburgh Livingston." The mortgage was conditioned for the payment of $6000.

On the 10th of May, 1838, Halsey and wife, the mortgagors conveyed to George Wildes, ninety-two acres of the mortgaged lands by a deed recorded on the 19th of January, 1839.

On the 29th of December, 1843, George Wildes, the grantee under the last mentioned deed, with Agnes his wife,

conveyed the ninety-two acres granted to him, to Francis Griffin, Charles G. Havens and Christopher Townsend, in trust to sell for the benefit of certain creditors.

On the 12th June, 1846, upon the payment by Halsey, the mortgagor, to the plaintiffs, of $4000 of the principal and $489·61 on account of the interest due upon the mortgage, and at his request, the plaintiffs released to John Hunt all the mortgaged premises excepting the ninety-two acres previously conveyed by Halsey to Wildes. The land so released was at the time worth more than $10,000. In the release, the lands are described in three parcels, and as "part of the premises conveyed by Hunt, the releasee, to William Paulding by deed bearing date the 25th day of February, now past, as parcels 1, 3 and 4." The deed referred to from Hunt to Paulding described parcel No. 1 as "adjoining land now or late of George Wildes, &c." meaning the ninety-two acres in question, and on a map annexed to this deed they are laid down as "Land of George Wildes, Esq."

After the conveyance from Halsey to Wildes, of the ninety-two acres in 1837, that portion of the land was generally known as the George Wildes' farm. In 1842, the plaintiffs employed their solicitors and counsel to foreclose the mortgage, who made searches and prepared a bill of complaint and notice *litis pendentis* in which the names of Wildes and his wife were inserted as defendants. The proceedings were however stopped before proceeding further.

The case was brought to hearing upon pleadings and proofs at a general term of the superior court in May 1851, when the bill was dismissed on the ground that at the time the plaintiffs executed their release to Hunt, they had notice of the conveyance of the ninety-two acres to Wildes, and that the part released was at the time of sufficient value to satisfy the whole of the mortgage debt; by means whereof the lands conveyed to Wildes were discharged

from it liens. A report of the case in the superior court will be found in 4 *Sand.* 565.

The plaintiffs appealed to this court.

*S. A. Foot*, for appellant.

*J. Laroque*, for respondent.

JOHNSON, J. Upon the conveyance of the ninety-two acres to Wildes by Halsey, an equity arose in Wildes' favor to have the residue of the mortgaged premises applied in the first instance to the payment of the mortgage debt. Subsequently to that conveyance, the mortgagees released from the lien of the mortgage the whole of the residue of the premises which had been conveyed by Halsey to Hunt, and by him to Paulding. This residue at the time of the release was of greater value than the amount of the mortgage. Upon these facts, if the case stopped here, it is not denied by the counsel for either party, that the appellants would not be deprived of the lien of their mortgage; for the right to have encumbered lands which have been sold in successive parcels applied to the satisfaction of the incumbrance in the inverse order of their alienation, being only an equity, and not a legal right, the prior incumbrancer is not bound at his peril to ascertain whether any of the mortgaged lands have been aliened or subsequently encumbered, when applied to to release part of the lands bound by his incumbrance. In order to impose upon him the obligation to regard this equity, his conscience must be affected by knowledge of the facts upon which the equity depends, or by notice sufficient to put him upon inquiry. (*Stuyvesant* v. *Hall*, 2 *Bar. Ch. R.* 151; *Guion* v. *Knapp*, 6 *Paige*, 3.

It is quite obvious that the existence of this equity does not depend upon the purchase being for a valuable consideration. Looking at the simplest case, that of mortgagor and his grantee of part of the mortgaged premises,

SEL. IV.—35.

plainly as between them, the ungranted lands are first liable. The introduction of new parties does not alter this equity. They who come in after the first purchase, and under the mortgagor succeed to his position and obligations. (*Clowes* v. *Dickinson,* 5 *J. C. R.* 235; 3 *Rep.* 12 *b.* *Harbert's Case.*)

It is not contended that the appellants had any actual notice or knowledge of the conveyance to Wildes; nor was the recording of the conveyance to Wildes constructive notice to them of its existence. (*Stuyvesant* v. *Hall,* 2 *Barb. Chr. Rep.* 151.)

The information obtained by Mr. Strong, the solicitor who was retained to foreclose the mortgage in 1842, can not be regarded as effectual, because it was not acquired in reference to the same transaction. Had the solicitor who advised or drew the release received the same information while that was in preparation, it would have bound the appellants. (2 *Sugden on Vend.* 456, *pl.* 16.)

We, however, agree with the superior court in the opinion that constructive notice, or at least notice to put the appellants upon inquiry, existed in this case. The release executed by the appellants to Hunt, dated April 30, 1846, after describing the three parcels released, declares the same to be part of the same premises conveyed to William Paulding by said Hunt and wife, by deed dated February 25, then last past, and to be therein described as parcels 1, 3 and 4. This reference of course makes the deed referred to, and the description of the premises therein contained, as completely notice of its contents to the appellants, as if it were recited at length in the deed. Now in that deed the description of parcel number 1 was as follows: "Beginning at the north-easterly corner thereof, on the south side of the New York and Albany post road adjoining land now or late of George Wildes, and running thence southerly in three different courses along said Wildes' land to land of Isaac Lafurgy," &c.

Now when the mortgage to the appellants was executed,

the land therein contained was described as a farm con-
sisting of about 294 acres, and being part of a farm there-
tofore conveyed by Vanbrugh Livingston to the mortgagor.
The appellants, by means of the deed to Paulding, had
then this state of facts presented to them, that in a deed
by the grantee of their mortgagor of part of the mortgaged
premises, another part is described not as their mort-
gagor's property, but as now or late the property of George
Wildes; and in another part of the same deed it is called
the said Wildes' land. We think that this was sufficient
to arrest the attention of the appellants, and put them
upon inquiry. The property having come from Livingston
to Halsey, described only as Livingston's, having been
mortgaged by Halsey to them by a general description and
as having been Livingston's, the fact that a particular
parcel of it is afterwards spoken of as belonging then or
lately to another person, would naturally excite surprise,
and lead to inquiry. Two objections were urged upon the
argument to this conclusion, the one, upon the ground
that the description in the mortgage gives no information
of the ownership of the land on the east, a blank being
left for the name of the owner; the other because the
description of parcel number 1 in the Paulding deed gives
no intimation that Wildes' land was a part of the mort-
gaged premises. These objections are each founded upon
a single erroneous idea, that the appellants could not
locate the land described in the release so as to distinguish
what part of the premises mortgaged to them was not
included in the description of the lands to be released
This they obviously could do, or were bound to be able to
do. They therefore knew, or were bound to know, that a
strip of land lying west of their eastern boundary was
not released, and yet that that strip was described not as
the property of their mortgagor, but of a third person.
No matter what was the name of the owner to the east of
their eastern boundary, they knew that the land west of
that line had been mortgaged to them as Halsey's, and that

a description of it as the property of another person could probably be true only on the supposition of a conveyance by Halsey prior to the release they were about to execute The decree of the superior court must therefore be affirmed with costs.

Decree affirmed.