160 U.S. 171 (1895)
TOWNSEND
v.
VANDERWERKER.
No. 78.
Supreme Court of United States.
Argued November 20, 1895.
Decided December 16, 1895.
APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.
*175 Mr. John Goode and Mr. Benjamin Butterworth, (with whom was Mr. J.C. Dowell on the brief,) for appellant.
Mr. J.H. Lichliter for appellees.
*178 MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.
1. The ultimate object of the bill in this case is the recovery of a pecuniary demand, and, if this were its only object, it *179 would be obnoxious to the general rule embodied in Rev. Stat. § 723, inhibiting the maintenance of a suit in equity where the remedy at law is plain, adequate, and complete.
The bill, however, in addition to the recovery of money, seeks to establish a trust in favor of the plaintiff, and to obtain a sale of the property to satisfy his claim. The prayer is, not for a reimbursement to the plaintiff of the sums advanced, but for the payment to him of a sum equal to one-half the value of the house and lot in which he claims an interest, and of the rents accrued thereon. Had it not been for the fact that, subsequent to the outlays made by the plaintiff in improving the property, Mrs. Marvin had encumbered it by a trust deed in favor of Amos White, in the sum of $10,000, an ordinary bill for a specific performance would have been the proper remedy; but as the court upon such a bill could only decree him one half the property subject to such mortgage, he claims in this bill the full moiety of the value of the property, as it stood when the disbursements were made, and before it was incumbered by the mortgage, and prays that such amount may be awarded him from the sale of the property; and that in respect to the residue, if any, he stand as a general creditor of her estate.
The case is not unlike that of Wylie v. Coxe, 15 How. 415, where a bill was filed to recover a contingent fee of five per cent out of a certain fund arising from the prosecution of a claim against the Republic of Mexico. It was held that the death of the owner of the fund did not dissolve the contract, but that the right to compensation constituted a lien upon the money when recovered, and that this was sufficient ground for jurisdiction in equity, inasmuch as the payment of the fund to the executrix in Mexico would place it probably beyond the reach of the complainant.
Still more nearly analogous in principle is the case of Seymour v. Freer, 8 Wall. 202, 215. This suit was founded upon an agreement between Seymour and one Price, by which Price undertook to devote his time and judgment to the selection and purchase of land to a certain amount, with a stipulation that the lands should be sold within five years, and one-half *180 of the profits should be paid to Price and the other to Seymour. It was held that Seymour took the legal title in trust for the purpose specified, and to this extent Seymour was a trustee and Price the cestui qui trust; that the trust continued after the expiration of the five years, unless Price subsequently relinquished his claim, and that the land which was to be converted into money should be regarded and treated in equity as money. "The agreement," said Mr. Justice Swayne, "that the property should be sold, and half of the profits paid to Price, was a charge upon the property, and gave him a lien to the extent of the amount to which he should be found entitled upon the execution of the agreement, according to its terms." In reply to the contention that Price had a complete remedy at law, he further observed: "An action at law, sounding in damages, may undoubtedly be maintained in such cases for the breach of an express agreement by the trustee, but this in nowise affects the right to proceed in equity to enforce the trust and lien created by the contract. They are concurrent remedies. Either, which is preferred, may be selected. The remedy in equity is the better one. The right to resort to it under the circumstances of this case admits of no doubt, either upon principle or authority. Such, in our judgment, were the effect and consequences of the contract."
The earlier English cases held broadly that where a vendor of land had disabled himself from carrying out a contract to sell the land to the plaintiff, by a subsequent sale to another party, a court of equity would entertain a bill as for a specific performance, and award damages to the plaintiff. This was the distinct ruling in Denton v. Stewart, 1 Cox Ch. Cas. 258, where the court directed an inquiry as to what damages the plaintiff had sustained, and decreed that such damages should be paid by the defendant. A similar ruling was made in Greenaway v. Adams, 12 Ves. 395, although the Master of Rolls indicated a doubt with regard to the soundness of the principle announced in Denton v. Stewart. In Gwillim v. Stone, 14 Ves. 128, the bill asserted from the first that defendant could not make a good title, and asked for compensation by reason of the failure of the contract, and a decree was *181 made for delivering up the contract, without prejudice to an action, instead of an inquiry before the master.
In Todd v. Gee, 17 Ves. 273, 279, the case of Denton v. Stewart was practically overruled by Lord Chancellor Eldon, who held that the plaintiff in a bill for specific performance was not entitled generally to satisfaction by way of damages for the non-performance, to be ascertained by an issue, or reference to a master, the court saying "that, except in very special cases, it is not the course of proceeding in equity to file a bill for specific performance of an agreement; praying in the alternative, if it cannot be performed, an issue or an inquiry before the master with a view to damages. The plaintiff must take that remedy, if he chooses it at law. Generally, I do not say universally, he cannot have it in equity, and this is not a case of exception." This case was followed in Ferguson v. Wilson, L.R. 2 Ch. 77, where the plaintiff prayed the specific performance of a resolution, passed by the board of directors of a railway company, under which he alleged that he was entitled to have a certain number of shares allotted to him; and also prayed that if it should appear that all the shares had been allotted to other shareholders, the directors might indemnify him out of their own shares, or might be charged with damages. All the shares having been allotted before the filing of the bill, it was held that, as no remedy by way of specific performance was possible, plaintiff's claim for damages failed also.
The principle of these cases was also adopted by Chancellor Kent in Kempshall v. Stone, 5 Johns. Ch. 193, which is strongly relied upon by the appellees in this connection. In that case, the defendant entered into an agreement with the plaintiff to sell and convey him a lot of land, and, after the time of performance had elapsed, sold the land to a third person for a valuable consideration without notice of the agreement. Plaintiff filed his bill for a specific performance, which it was held could not be decreed, the lands having passed into the hands of a bona fide purchaser without notice, and the court further held that the plaintiff's remedy was at law for compensation in damages. In this case, as well as in the English *182 cases above cited, there was no possible lien upon the land, and no trust in favor of the plaintiff which the court could execute, and it was very properly held that his only remedy was at law.
But if the defendant has not wholly disabled himself from carrying out the contract, he may be decreed to perform specifically so much as he is still able to perform, and plaintiff may recover damages for the residue. Thus in Burrow v. Scammel, 19 Ch. D. 175, when the defendant's title came to be investigated it was found that she was possessed of only a moiety of the premises she had agreed to lease to the plaintiff, the other moiety being vested in her son, a minor. She was decreed to specifically perform so much of the contract as she was able to perform, with an abatement of half the rent, and an inquiry as to damages was refused only upon the ground that there was no evidence that plaintiff had sustained any damages. The American cases are also to the effect that, where the defendant has only partially disabled himself from carrying out the contract, the plaintiff may be entitled to a specific performance so far as it can be enforced, and may receive compensation in damages for the deficiency. 3 Pomeroy Eq. Juris. §§ 1405, 1407; Bostwick v. Beach, 103 N.Y. 414.
In the case under consideration, Mrs. Marvin had but partially disabled herself from carrying out her contract with the plaintiff according to its original terms, by incumbering the property with the trust deed in favor of White. Under such circumstances, the plaintiff might have filed a bill for a specific performance pro tanto, and obtained a decree for a conveyance of one half of the property to himself, subject to a moiety of the trust deed: but we think he also had the option of treating the whole property as subject to a lien in his favor, and praying that it be sold to satisfy his claim for half of its original value. He would doubtless have a remedy at law to recover the value of his services as well as the moneys disbursed by him. This, however, under the averments of his bill, would not be the amount to which he would be justly entitled. It is possible that, in an action at law, he might also recover a personal judgment against the estate for one *183 half the value of the property in question; but this is not the complete and adequate remedy which a bill to enforce a trust in his favor upon the property in dispute would afford to him, and we think it is not beyond the power of a court of equity to entertain a bill for this purpose. Sullivan v. O'Neal, 66 Texas, 433.
2. Does the Statute of Frauds stand in the way of a decree in his favor? As there was no contract in writing, plaintiff must maintain his bill, if at all, upon the theory of a part performance. He must maintain it, too, upon the same principles and with the same cogency of proof as if it were in fact, as well as in substance, a bill for a specific performance. In this connection, the allegation is in effect that the plaintiff arranged with Mrs. Marvin to pay half the cost of the lot, and half the cost of erecting a dwelling thereon, he to purchase the materials and superintend the erection of the dwelling, and that each was to own half the property; that he performed his contract in full; that she not only never questioned that he had paid his half in full, but stated to him and to mutual friends that he had paid in full, and was jointly interested with her in the premises; that his ownership of half of the premises was never disputed by her, but was openly recognized, and that, when he requested a settlement and that she convey his half to him, she replied that she had provided for that in her will, by which she gave him the entire property.
Admitting to the fullest extent the proposition that a mere payment of the consideration in money is insufficient to remove the bar of the statute, there is no doubt that such payment, accompanied by an entry into possession under the contract, is such a part performance as will support the bill. This court so expressly decided in the case of Neale v. Neales, 9 Wall. 1. And in Brown v. Sutton, 129 U.S. 238, it was held that, where the defendant's intestate bought certain property for the complainant, under a promise made orally that he would make over the title to her upon consideration that she should take care of him during the remainder of his life, as she had done in the past, there had been sufficient part performance of this parol contract to take it out of the operation of the statute *184 of frauds, and render it capable of being enforced by a decree for specific performance. Similar cases of promises to convey property upon the consideration of support are frequent in the books. Gupton v. Gupton, 47 Missouri, 37; Sutton v. Hayden, 62 Missouri, 101; Hiatt v. Williams, 72 Missouri, 214; Watson v. Mahan, 20 Indiana, 223; Twiss v. George, 33 Michigan, 253; Warren v. Warren. 105 Illinois, 568; Patterson v. Patterson, 13 Johns. 379.
The general principle to be extracted from the authorities is that if the plaintiff, with the knowledge and consent of the promisor, does acts pursuant to and in obvious reliance upon a verbal agreement, which so change the relations of the parties as to render a restoration of their former condition impracticable, it is a virtual fraud upon the part of the promisor to set up the statute in defence, and thus to receive to himself the benefit of the acts done by the plaintiff, while the latter is left to the chance of a suit at law for the reimbursement of his outlays, or to an action upon a quantum-meruit for the value of his services. In discussing what are and what are not acts done in part performance, which will entitle the plaintiff to a decree in his favor, the entry into possession of the land and the making of valuable improvements thereon is treated by all the cases as one of the most satisfactory evidences of part performance, and entitling plaintiff to a decree in his favor. 3 Pomeroy Eq. Juris. § 1409; Fry on Spec. Perf. § 585. Wills v. Stradling, 3 Ves. Jr. 378; Mundy v. Jolliffe, 5 My. & Cr. 167; Williams v. Evans, L.R. 19 Eq. 547.
Although there is no distinct allegation in this bill that the plaintiff entered into possession, there is an allegation that the land in question consisted of a lot 34 feet in width by 110 feet in depth, and that the plaintiff gave his personal attention to the selection and purchase of the materials for a dwelling-house, and the erection of the same upon this lot, and paid $4000 in defraying the cost of the house  facts which are inconsistent with any other theory than that he took possession of the lot for the purpose of erecting the house. Whitsitt v. Trustees Presbyterian Church, 110 Illinois, 125. If he subsequently, and after the completion of the house, allowed Mrs. *185 Marvin to take possession of the lot, in view of the intimate relations between them, he lost no rights as against her which he obtained by his original entry, and the erection of the house. The possession thus taken was evidently in performance of and in reliance upon the original agreement with the owner, and, we think, taken in connection with the improvements made by him it makes a case of part performance sufficient to remove the bar of the statute. His subsequent relinquishment of such possession was evidently with no intention to abandon the interest he had already acquired in the property. Drum v. Stevens, 94 Indiana, 181.
3. We are also of opinion that, under the peculiar circumstances of this case, the bill is not open to the defence of laches. It is true the advances were made at sundry times from 1879 to 1884, and the bill was not filed until 1889, but the delay is sufficiently accounted for by the intimate personal relations that had always existed between the plaintiff and Mrs. Marvin, and the unlimited confidence he had reposed in her. It is alleged in this connection that they had long lived together in the same house; that she had treated him and spoken of him as a foster child; that from the time the services were rendered until her death he had repeatedly urged her to come to a settlement with him; that, whenever the subject was referred to, she acknowledged the justice of the claim, and assured him she had provided for him in her will, saying that she intended the house to be his when she was done with it, and that it should belong to them both while she lived; that on this account he had neglected to take measures for the enforcement of his rights; and that he did not know until her death that she had failed to carry out her promise to devise the entire property to him.
Dealing with a person who stood in this relation to him, and with whom he had always been upon friendly and even intimate terms, the same diligence could not be expected of him as would have been if he had been treating with a stranger. If, as he avers, she had promised to leave him the entire property at her death, he may have considered it to his advantage to await this contingency, rather than to pursue *186 her for half the property during her life. As she died in February, 1889, and the bill was filed in October of the same year, there can be no claim that, with reference to this event, he did not act with sufficient promptness. The only circumstance that occurred during the period of nine years from the time the contract was made which was calculated to excite his suspicion that she did not intend to carry out her alleged agreement, was the execution of a trust deed in favor of White, of which, however, there is nothing in the bill to indicate that he had actual notice. While the record of this trust deed would operate as constructive notice to subsequent purchasers or encumbrancers of the property, it is at least doubtful whether it would have the same effect as to one who stood in plaintiff's relation to the property. Howard Ins. Co. v. Halsey, 8 N.Y. 271; Bates v. Norcross, 14 Pick. 224; James v. Brown, 11 Michigan, 25; Cooper v. Bigly, 13 Michigan, 463; Idlehart v. Crane, 42 Illinois, 261; Doolittle v. Cook, 75 Illinois, 354.
The question of laches does not depend, as does the statute of limitation, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did. In this case, we think the delay is fully explained. Gunton v. Carroll, 101 U.S. 426. It is true that one of the parties to this alleged agreement has died, and that the court has lost the benefit of her testimony with regard to the alleged agreement. This, however, is a circumstance to be considered by the court in weighing the evidence, rather than as an obstacle to the maintenance of the bill upon demurrer.
There are doubtless circumstances in the case which indicate at least a difficulty of proof, if not to arouse a suspicion, that perhaps the plaintiff may have overstated his case, but the pleader in a bill in equity is not bound to state either the testimony or facts which militate against his theory, but only to present his case in the light most favorable to his own interests, and ask that, upon such presentation, the court shall decide upon the sufficiency of his bill.
*187 4. We do not think the bill is open to the charge of multifariousness. While the tenth paragraph sets out a verbal agreement to convey an interest in land, and the prayer is for the payment of a certain amount of money, the discrepancy is explained by the fact that, in view of the trust deed to White, a decree for a half interest in the land will fail to satisfy plaintiff's claim, and that his lien is claimed to extend not merely to the half interest but to the whole property, to satisfy her promise to convey to him a moiety of its unencumbered value. Of course, nothing that is here said can affect the rights of White.
The decree of the court below is therefore
Reversed and the case remanded with directions to overrule the demurrer and for further proceedings in conformity with this opinion.