## BALEN *v*. LEWIS.

1. MORTGAGES—RELEASE—DISCHARGE—NOTICE.

A mortgagee, by releasing several distinct parcels of land, does not discharge from liability another parcel of land sold prior to such releases, unless he had notice of the sale by the mortgagor, or that the purchaser was claiming rights which would put a reasonably prudent man on inquiry.

2. SAME—CONSTRUCTIVE NOTICE.
    In such case the record of the purchaser's deed is not constructive notice to the mortgagee.

3. SAME—ACTUAL NOTICE.
    The fact that the mortgagee's agent was in the city once or twice a year after the purchaser went into possession is not sufficient to charge the mortgagee with notice of the purchaser's occupancy.

4. TRUST DEED—PRESUMPTION AS TO APPLICATION OF RENTS.
    Where a mortgagor gives a trust deed to the mortgagee's husband for the benefit of the mortgagee, authorizing him to sell the property and apply the proceeds to the expenses of the trust, interest and principal of the mortgage, and remainder to the grantor, and it is accepted with the understanding that it shall not in any wise affect or impair the mortgage, it will not be presumed, in the absence of evidence to that effect, that the rents and proceeds of the property, which the mortgagor was thereafter permitted to collect, were not applied in accordance with the trust deed.

Appeal from Bay; Shepard, J. Submitted April 10, 1902. (Docket No. 44.) Decided May 19, 1902.

Bill by Fanny R. S. Balen against Frances Lewis, William W. Chapman, administrator of the estate of George Lewis, deceased, Joseph E. Chateauneuf, and others, to foreclose a mortgage. From a decree in favor of defendant Chateauneuf, complainant appeals. Reversed.

*U. R. Loranger* (*ᴌ. P. Flynn,* of counsel), for complainant.

*James Donnelly,* for defendant Chateauneuf.

HOOKER, C. J. The complainant, a mortgagee, foreclosed her mortgage, which, when given, covered several distinct parcels of land. Defendant Chateauneuf had, after the execution of complainant's mortgage, unbeknown to the complainant, purchased, entered upon, and improved one of said parcels, which we may designate as " Lot 8."

Several of the parcels were released from the mortgage after the sale of lot 8 to Chateauneuf.    Being made a party defendant as a subsequent purchaser, Chateauneuf answered that lot 8 was discharged from liability, by reason of the release of other parcels primarily liable, and the court so decreed.    The complainant has appealed.

Complainant's mortgage was made on October 10, 1881. At that time there was no building upon lot 8.    Defendant Chateauneuf bought the lot in May, 1882, erected a house, and moved upon the premises in June, 1882, or thereabouts, and has since occupied it as a homestead.    He received a deed from Lewis, complainant's mortgagor, in 1887, when he gave a mortgage back to Lewis for $192. The evidence shows that the complainant released several parcels of land from the lien of said mortgage after the defendant Chateauneuf purchased and entered upon lot 8. There is, however, an absence of proof that either the complainant or her agent had actual notice of defendant's rights.    It is insisted by defendant's counsel that complainant had constructive notice.    The mere fact that defendant's deed was of record is not constructive notice. In order to raise an equity in favor of a purchaser, it must appear, either that the mortgagee, before releasing, had notice of the sale by the mortgagor, or that the purchaser was claiming rights which would put a reasonably prudent man on inquiry.    In such case he would be held to notice of facts which the record of the deed would disclose.

The defendant asserts that the circumstances of this case should constitute such notice as would put a prudent man on inquiry, claiming that the complainant's agent was in the city once or twice a year, and must be chargeable with knowledge of defendant's occupancy.    We are referred to the case of *Dewey* v. *Ingersoll*, 42 Mich. 17 (3 N. W. 235), as a case in point, where it was held that the facts should have put the mortgagee upon inquiry.    The facts were that the mortgaged premises were upon one of the principal streets of the village where the mortgagee resided, and the purchaser promptly recorded her deed and went

into actual possession of the premises, made improvements, and resided thereon. There was evidence tending to show that one of the mortgagees had actual notice of these facts, and he, although examined as a witness, did not deny having notice. The present case falls short of this. Actual notice is clearly disproved. Chateauneuf appears to have been as ignorant of complainant's mortgage interest as she was of his subsequent purchase, although, had he examined the record before purchasing, he would have learned of it; and such examination he was in duty bound to make, while the complainant was under no obligation to search the record for subsequent deeds. *Stuyvesant* v. *Hone*, 1 Sandf. Ch. 419; *Cheesebrough* v. *Millard*, 1 Johns. Ch. 414 (7 Am. Dec. 494); *Howard Ins. Co.* v. *Halsey*, 8 N. Y. 271 (59 Am. Dec. 478); *James* v. *Brown*, 11 Mich. 25; *Cooper* v. *Bigly*, 13 Mich. 476; *Woods* v. *Love*, 27 Mich. 309; *Hall* v. *Edwards*, 43 Mich. 475 (5 N. W. 652); *Shelden* v. *Warner*, 45 Mich. 640 (8 N. W. 529).

This court said, in the case of *James* v. *Brown, supra:*

"While the law requires every man to deal with his own so as not to injure another, it imposes a greater obligation on the other to take care of his own property than on a stranger to take care of it for him. And to make it the duty of the first mortgagee to inquire before he acts, lest he may injure some one, would reverse this rule, and make it his duty to do for the second mortgagee what the latter should do for himself. To affect the conscience, therefore, of the first mortgagee,—for this whole doctrine is one of equity jurisprudence, and not of positive law,—it would seem that he should have actual knowledge of the second mortgage. We do not say notice from the second mortgagee is absolutely necessary to enable him to claim the rights of which we have been speaking; but we do think that the existence of the second mortgage should clearly be brought home to the knowledge of the first mortgagee in such a way as to show an intentional disregard by him of the interests of the subsequent mortgagee."

We think, therefore, that the complainant has not impaired her security by her releases.

A trust deed was executed by Lewis, the mortgagor, to complainant's husband, on the 30th day of November, 1894, whereby Lewis conveyed to him all of the property remaining in his name; also all leases and executory contracts outstanding. He was authorized to sell the property and apply the proceeds: (1) The expenses of the trust; (2) taxes; (3) insurance, if deemed advisable; (4) interest on complainant's mortgage; (5) the principal of the mortgage; (6) reconvey remainder to Lewis. This trust was accepted in writing upon the expressed understanding that the same was not in any wise to bind said complainant, or be deemed payment of her mortgage, or in any wise affect or impair the security, rights, or remedies given by said mortgage. It is contended by defendants' counsel that this trust deed was given for the benefit of the complainant, and that it was her duty to collect rents from tenants and amounts outstanding upon executory contracts, and especially a sum secured by mortgage upon lot 8, given by defendant to Lewis, and which sum he is said to have afterwards paid to Lewis by reason of his ignorance of the existence of the complainant's mortgage and the trust deed. Lewis was permitted to collect a portion of the rents, and possibly some amounts due upon contracts.

We are unable to find that anything was paid to Lewis upon the mortgage after the trust deed was made, and, if it could otherwise be claimed that the trust deed operated as an assignment of the mortgage to the complainant's agent, it is not clear that it had not been previously paid to Lewis. Nor is there any proof that Balen ever heard of the mortgage. The record does not warrant us in saying that rents received by Mr. Lewis were not applied in accordance with the trust deed, and we find no evidence showing how much, if any, collected by Lewis was not paid over. Neither does it appear how much, if any, was collected by the family after Lewis' death, nor how much has been uncollected, if any. We must assume that the amount reported due upon the mortgage is correct, and feel constrained to hold that lot 8 should not be discharged from the mortgage. It should be the last parcel to be

sold, however. The decree will be modified in this particular, and complainant will recover costs of this court against defendant Chateauneuf.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.