ARTHUR W. SHERMAN, Respondent, *v.* CHARLES A. FOSTER et al., Defendants; GEORGE ROBERTS and HOWARD C. PEARSALL, Appellants.

1. EQUITY — SCOPE OF RELIEF. In equitable actions, the right to judgment is not limited to the facts as they existed at the commencement of the action, but the relief administered is such as the nature of the case and the facts, as they exist at the close of the litigation, demand.

2. FORECLOSURE OF MORTGAGE NOT DUE AT COMMENCEMENT OF ACTION. If one of several mortgages sought to be foreclosed in a single action was not due when the action was commenced, it may nevertheless be included in the decree of foreclosure with the other mortgages, provided it became due before judgment and was still unpaid, and was covered by the complaint and the evidence.

3. SUCH FORECLOSURE DEPENDENT UPON FORECLOSURE OF MORTGAGE PREVIOUSLY DUE. If, however, in such an action, there is no foreclosure as to any mortgage that was due when the action was commenced, there can be none as to the mortgage that was not due at that time.

4. REAL ESTATE AND CHATTEL MORTGAGES ON INSURED PROPERTY — APPLICATION OF INSURANCE MONEY. When a real estate mortgagee of insured premises also has a chattel mortgage upon insured personal property on the premises, and the insurance upon the chattel property is payable to the mortgagee as his interest in that property may appear, money received by him from the chattel insurance is applicable in the first instance to the chattel mortgage debt and not to the real estate mortgage indebtedness.

5. APPLICATION OF INSURANCE MONEY DEPENDENT UPON CONSENT OF MORTGAGEE'S CO-SURETY. When a chattel mortgage is given to secure the mortgagee against liability as surety for the mortgagor, it inures to the benefit of a co-surety; and the proceeds of insurance upon the mortgaged chattels cannot, without the consent of the co-surety, be diverted from the object of the chattel mortgage and applied in payment of an indebtedness secured by real estate mortgages given by the chattel mortgagor to the chattel mortgagee, to which the chattel mortgage was not collateral and for which the mortgagee's co-surety was not liable.

6. APPLICATION OF INSURANCE MONEY, AS BETWEEN MORTGAGOR AND MORTGAGEE. It is in the power of the mortgagor and mortgagee of insured property, as between themselves, to agree before the insurance money is paid that it shall not all be applied on the mortgage indebtedness; and the mortgagee has a right to release a part of his security so far as the mortgagor is concerned and to let him have a part of the insurance money.

7. Release of Security by Prior Incumbrancer — Subsequent Liens. A prior incumbrancer is not bound at his peril to look for subsequent liens when about to release a part of his security.

*Sherman* v. *Foster*, 91 Hun, 637, affirmed.

(Argued March 7, 1899; decided April 18, 1899.)

Appeal from a judgment of the late General Term of the Supreme Court in the third judicial department, entered December 5, 1895, affirming a judgment in favor of plaintiff entered upon a decision of the court after a trial at Special Term.

This action was commenced on the 12th of December, 1894, to foreclose three mortgages given to the plaintiff by Charles A. Foster upon his dwelling house in the village of Glens Falls. The first, dated December 22, 1891, was collateral to a bond in the penalty of $14,000, conditioned for the payment of $7,000, and interest, in one year from date. The second, dated March 28, 1892, was collateral to a bond for $2,000, conditioned for the payment of $1,000, and interest, in one year from date. The third, dated December 28, 1893, was collateral to a bond in the penal sum of $15,000, conditioned for the payment of $4,000, and interest, within one year from date, and also to indemnify the plaintiff " against all liabilities, costs and damages which he might sustain as surety for " said Charles A. Foster, as administrator of the estate of one Oscar Briggs, upon the usual administrator's bond filed in Surrogate's Court. As collateral to said bond for $15,000, and upon the same condition, Charles A. Foster also executed and delivered to the plaintiff a chattel mortgage, dated December 28, 1893, upon the furniture and other chattel property in said dwelling house. Frances A. Foster, wife of the said Charles A., united with him in the mortgages upon the real estate only.

The defendants George Roberts and Howard C. Pearsall were judgment creditors of Charles A. Foster, the former for $179.84, and the latter for $443.77, each judgment having been recovered on the 13th of March, 1894, and docketed on that day in the county where the property mortgaged was

situated.   These judgments became liens upon the real estate
next in order after the mortgages of the plaintiff.   An execu-
tion was issued to the sheriff of the proper county on the
former judgment July 7th, 1894, and on the latter April 26th,.
1894, and in November following the sheriff levied on said
real estate under the executions, which were renewed from
time to time, and on the 13th of April, 1895, sold the same
to said judgment creditors for the amount of their respective
judgments and the expenses of the sale.

On the 1st of June, 1894, said dwelling house and furniture
were damaged by fire.   There was insurance thereon at the
time, the policies being payable in the first instance to the
plaintiff, as mortgagee, as his interest should appear.   The
amount of the loss was agreed upon by Foster and the insur-
ance companies at $12,887.13, of which $6,537.01 was for loss
on the building and $6,350.12 was for loss on the personal
property.   After the amount of the loss had been thus settled,
but before any of the money was paid over by the companies,
it was agreed between the plaintiff and Foster, at Foster's
request, that " the money when received from the insurance
companies should be deposited in the bank in the plaintiff's
name and should not apply as a payment on the mortgages in
the first instance, but that the plaintiff should allow a portion
thereof to be used in paying debts owing by Foster to other
parties, and that the balance of the insurance money not so
used should apply as a payment on the mortgages ; " and that
" Foster should give the plaintiff orders specifying to whom
the money should be paid and the amounts."   Subsequent to
this agreement, and prior to August 24, 1894, the insurance
moneys were paid to the plaintiff by the various companies,
through drafts previously indorsed by Foster, and afterward,
upon orders given by Foster pursuant to said agreement, the
plaintiff paid to various creditors of Foster $3,997.25 from
the insurance money, of which amount $300 was used in pay-
ing taxes on the real property and about $600 in repairing the
building so as to protect it from injury by the elements.

On the 26th of November, 1894, another fire occurred by

which said building was again damaged, and at this time it was insured for $11,000, the policies being payable to the plaintiff as before. The insurance companies requested the plaintiff to unite with them in an appraisal of the loss, which he did, and the appraisers awarded $5,500, but Foster was not a party to the appraisal as the insurance companies refused to permit it. The companies failed to pay any part of that loss, and in April, 1895, one Wait, claiming to have an assignment of those policies from Foster, sued the companies, making Sherman a party defendant, alleging that the loss by the fire was more than $11,000. The companies answered, claiming, among other things, that the policies were void, owing to the lien of said judgments and executions, and the actions are still pending.

Early in 1895 Foster, as administrator of the Briggs estate, had an accounting before the surrogate which resulted in a decree that he pay about $5,900 to the parties interested. He failed to do so, and after an execution had been issued and returned unsatisfied, judgment was recovered against Sherman on the 22d of June, 1895, for $5,945.14, which he paid prior to the trial.

At the close of the evidence for the plaintiff, the defendants Roberts and Pearsall moved to dismiss the complaint on the ground that no cause of action had been proved because the two mortgages that were due when suit was begun had been fully paid out of the insurance moneys, but the motion was denied and exception taken. The defendants then went into their proofs, but at the close of all the evidence no motion for a nonsuit, or to dismiss, appears to have been made.

The trial court, after finding the facts substantially as thus stated, found as a conclusion of law that " a portion of the insurance money from the first fire having been paid out by Sherman to creditors of Foster, at Foster's request, without notice to Sherman of the equitable rights, if any, of the defendants Roberts and Pearsall, and without any knowledge or information on his part that they had any rights, said defendants are not entitled to have the amount so paid out by

Sherman charged against him as a payment upon his mortgage indebtedness." He found the sum of $9,842.87, which included $99 for insurance premiums paid by Sherman, due upon said bonds and mortgages, and directed the usual judgment of foreclosure for that amount. He also directed that the defendants Roberts and Pearsall, upon payment of the amount due the plaintiff, should be entitled to an assignment of all his securities, and that if the mortgaged premises did not sell for enough to satisfy the plaintiff's claims and the judgments of Roberts and Pearsall, they, or either of them, might apply at the foot of the judgment to be entered for such direction as they desired respecting the plaintiff's cause of action for the insurance moneys resulting from the last fire, to the end that they might resort to that fund for indemnity for plaintiff's recourse to the land.

Judgment having been entered accordingly, the judgment creditors appealed to the General Term, and from the judgment of affirmance rendered in that court they now come here.

*T. W. McArthur* for appellants. The complaint does not state facts sufficient to constitute a cause of action. (Thomas on Mort. 372.) The receipt of the insurance money by the plaintiff from the first fire was a satisfaction of the mortgage debts due at the time. (*Kercheir* v. *Schloss*, 49 How. Pr. 284; *Averille* v. *Loucks*, 6 Barb. 470; *Sheldon* v. *Dodge*, 4 Den. 220; *Grover* v. *Wakeman*, 11 Wend. 187.) Foster had no right to make arrangements with Sherman after the docketing of the judgments and the issuing of the executions. (Thomas on Mort. 253; *Prouty* v. *Price*, 50 Barb. 344; *Niagara Bank* v. *Rosevelt*, 9 Cow. 409; *Wyman* v. *Wyman*, 26 N. Y. 253.) The arrangement between plaintiff and Foster was inoperative. The arrangement could only have been made by all the parties to the creation of the fund or those who had succeeded to their rights. (*Martin* v. *T. Ins. Co.*, 101 N. Y. 498; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Holmes* v. *Evans*, 129 N. Y. 140; *Mead* v. *York*, 6 N. Y. 449; *Champney* v.

*Coope*, 32 N. Y. 543.) The insurance money received by the plaintiff was not a voluntary payment by Foster or by an agent of his, but a payment *in invitum* by a third person, and the law applied the whole amount as a payment at the very time it was made. Neither Sherman nor Foster had any control over it up to the time it was paid. (*O. C. Nat. Bank* v. *Moore*, 112 N. Y. 543; *Sanford* v. *Van Arsdall*, 53 Hun, 70; *Mead* v. *York*, 6 N. Y. 449; *Rogers* v. *Hosack*, 18 Wend. 319.) The plaintiff had constructive notice of the Roberts and Pearsall judgments before the arrangement was made with Foster. (*Gibson* v. *N. P. Bank*, 98 N. Y. 87; *Whitehead* v. *Boulnois*, 1 Y. & C. 303; *Williamson* v. *Brown*, 15 N. Y. 354; *Reed* v. *Gannon*, 50 N. Y. 345; *Ellis* v. *Horrman*, 90 N. Y. 466; *Edwards* v. *Dooley*, 120 N. Y. 540; *Hawley* v. *Cramer*, 4 Cow. 741.)

*L. M. Brown* for respondent. The action was not prematurely brought. (*Buckley* v. *Garrett*, 60 Penn. St. 333; *Duncan* v. *Brennan*, 83 N. Y. 487; *C. Nat. Bank* v. *Bell*, 125 N. Y. 38; Story's Eq. Juris. § 499; *Crisfield* v. *Murdock*, 127 N. Y. 315; *Miller* v. *Sawyer*, 30 Vt. 412; *Pond* v. *Harwood*, 139 N. Y. 111.) The appellants fail to show that the trial court was in error in deciding that the plaintiff should not be charged, as a payment on his mortgages, with the $3,997.25 which he paid from the insurance money on Foster's orders. (*De Witt* v. *A. Ins. Co.*, 157 N. Y. 353; *Coles* v. *Appleby*, 87 N. Y. 114; *Champney* v. *Coope*, 32 N. Y. 543; *Koehler* v. *Hughes*, 148 N. Y. 507; *E.*, etc., *Co.* v. *Hersee*, 103 N. Y. 25; *Burnap* v. *Nat. Bank*, 96 N. Y. 125; Thomas on Mort. § 383; *Cheesebrough* v. *Millard*, 1 Johns. Ch. 408; *Guion* v. *Knapp*, 6 Paige, 35; *Howard Ins. Co.* v. *Halsey*, 8 N. Y. 271; *Stuyvesant* v. *Hall*, 2 Barb. Ch. 151; *Libby* v. *Tufts*, 121 N. Y. 172.) The testimony given by plaintiff in regard to his conversation with Foster was competent. (Code Civ. Pro. § 829; *Holcomb* v. *Campbell*, 118 N. Y. 46; *Whitman* v. *Foley*, 125 N. Y. 652.) The claim of the appellants that the judgment is wrong because the plaintiff is allowed

credit for the whole amount paid by him from the insurance
money, although in excess of the amount originally agreed
upon between Foster and himself, is untenable. (*Gordon*
v. *W. S. Bank,* 115 Mass. 588; *Kendall* v. *Woodruff,* 87
N. Y. 1.)

VANN, J.   Although the third mortgage of the plaintiff
was not due when this action was commenced, as it became
due before judgment, if it was still unpaid, it was properly
included with the other two mortgages in the decree of fore-
closure, under the allegations of the complaint, the evidence,
the position taken by the parties at the trial and the rule gov-
erning the subject. (*Pond* v. *Harwood,* 139 N. Y. 111, 120.)
As the court said, in the case cited, in equitable actions "the
right to judgment is not limited to the facts as they existed
at the commencement of the action, but the relief adminis-
tered is such as the nature of the case and the facts, as they
exist at the close of the litigation, demand. (*Peck* v. *Good-
berlett,* 109 N. Y. 180; *Mad. Ave. Bap. Ch.* v. *Oliver St.
Bap. Ch.,* 73 id. 82; *Worrall* v. *Munn,* 38 id. 137; *Gay* v.
*Gay,* 10 Paige, 369)."   If, however, there had been no fore-
closure as to either mortgage that was due when the action
was commenced, there could have been none as to the mort-
gage that was not due at that time, because there would have
been no foundation for a decree when the defendants were
first brought into court and no reason for the commencement
of the suit.

The appellants claim that as it is alleged in the complaint
that the plaintiff had received $8,889.88 from the insurance,
nothing whatever was due when the action was commenced,
because that sum exceeded the amount of the first and second
mortgages, and the plaintiff had not then sustained any loss
on the administrator's bond.   The entire allegation of the
complaint upon the subject is, that over $2,000 of such insur-
ance was paid on account of the loss on the personal property,
and that "by the terms of the policies of insurance covering
said chattel property the loss thereon was made payable to

75

the plaintiff as his interest in such chattel property might appear, and the said sum so received by him on account of the damage to such chattel property should be applied as a payment upon the indebtedness or liability secured by said chattel mortgage." We think this suggests the true rule. While the plaintiff received, according to his admission, the sum of $8,889.88 from the insurance, only $6,537.01 was paid on account of the loss on the building, the remainder, $2,352.87, having been paid on account of the destruction of the personal property. The insurance on the chattels was payable to the plaintiff as mortgagee and was necessarily applicable to the particular debt secured by the chattel mortgage, independent of any other debt that the plaintiff had at the time against the mortgagor. The third bond represented the only debt to which the insurance upon the chattels was applicable, and the plaintiff had no right to divert it without the consent of the mortgagor, by applying it to the payment of any debt except that for which the chattel insurance was pledged. (*Duncan* v. *Brennan*, 83 N. Y. 487; *Continental National Bank* v. *Bell*, 125 N. Y. 38; *Buckley* v. *Garrett*, 60 Pa. St. 333.) The chattel mortgage was not collateral to any real estate mortgage, but in connection with the third mortgage on the realty was collateral to the bond for $15,000. The moneys received from the chattel insurance were applicable in the first instance to the chattel mortgage debt and this left something due on the first and second real estate mortgages.

Furthermore, Mrs. Foster was co-surety with her husband upon the administrator's bond, and " a co-surety is entitled to any indemnity, or the avails of it, which his co-surety suing for contribution had from the principal debtor, and if the co-surety has released, or discharged the indemnity, or has collected, and applied the avails to his own use, he cannot recover." (*Crisfield* v. *Murdock*, 127 N. Y. 315, 322, and cases cited.) The chattel mortgage was given by Foster, the principal, in part to indemnify the plaintiff against his liability as surety on the administrator's bond, and hence it inured to the benefit of Mrs. Foster, the co-surety. The appellants, therefore,

cannot insist that the proceeds of the chattel insurance should, without her consent, be diverted from the object for which the mortgage on the chattels was given and applied to the payment of the indebtedness secured by the first and second mortgages on the real estate, to which the chattel mortgage was not collateral and for which she was not liable.

The appellants further claim that the plaintiff should be charged with $12,887.13, the whole amount of the insurance money, without any deduction on account of the sum paid on Foster's orders to his creditors.  Over $6,000 of the entire amount of insurance was paid on account of damages to the furniture and the appellants never had any lien upon this sum, for they never caused a receiver in supplementary proceedings to be appointed.  As the building and chattels belonged to Foster, the money paid over by the insurance companies was his money, subject to the lien of the plaintiff thereon as security for the payment of his mortgage indebtedness.  It was in the power of the mortgagor and mortgagee, as between themselves, to agree before the insurance money was paid that it should not all be applied on the mortgages. (*Coles* v. *Appleby*, 87 N. Y. 114, 119.)  Such an agreement was made in this case, and, as between the parties thereto, there is no doubt that the plaintiff was not obliged to apply upon his mortgages the sum paid out on Foster's orders.  The debtor and the creditor can always agree as between themselves upon the application of a sum paid by the former to the latter.  The plaintiff had the right to release a part of his security so far as the mortgagor was concerned and to let him have a part of the insurance moneys.

We now reach the question whether he had the right to do this as against the appellants, and this involves an inquiry as to whether the plaintiff had such notice of the appellants' judgments as to charge him with knowledge thereof.  They interposed no such defense in their answer, and took no such position upon the trial.  The defense of payment, which was alleged, is quite different from the defense that the plaintiff had violated the equitable rights of the appellants after notice

of their existence. There is no finding that the plaintiff knew of the appellants' judgments when he released his claim upon a portion of the insurance money and the rule is that a fact cannot be considered by this court for the purpose of reversing a judgment unless it either appears in the findings or, according to the practice formerly prevailing, is requested to be found upon uncontroverted evidence. (*Koehler* v. *Hughes*, 148 N. Y. 507, 515.) Assuming that the statement in the first conclusion of law, that "a portion of the insurance money from the first fire having been paid out by Sherman to creditors of Foster at Foster's request, without notice to Sherman of the equitable rights, if any, of the defendants Roberts and Pearsall, and without any knowledge or information on his part that they had any rights," is a finding of fact, the exception thereto simply presents the question whether there was any evidence to sustain it. The facts in substance were that the plaintiff knew Foster was heavily in debt, that a bank was about to sue him, and that two small judgments, amounting to less than $300, had been recovered against him, but they were paid on Foster's order from the insurance moneys. It does not appear that the plaintiff knew that Foster was indebted to the appellants or that he ever did any business with them, or that they had recovered judgments against him. A prior incumbrancer is not bound at his peril to look for subsequent liens when about to release a part of his security, for, "in order to impose upon him the obligation to regard this equity, his conscience must be affected by knowledge of the facts upon which the equity depends or by notice sufficient to put him upon inquiry." (*Howard Ins. Co.* v. *Halsey*, 8 N. Y. 271, 273.) As was said by Chancellor Kent in *Cheesebrough* v. *Millard* (1 Johns. Ch. 409, 414), the plaintiff was "not bound to search for the judgment, and the record was no constructive notice to" him, "and, as this rule of substitution rests on the basis of mere equity and benevolence, the creditor who has thus disabled himself from making it is not to be injured thereby, provided he acted without knowledge of the other's rights and with good faith and just

intention, which is all that equity in such cases requires." The question of notice was not raised on the trial in any way, and it was not raised after the trial unless the exception to the facts recited in the conclusion of law raises it. We do not think the court erred in making that finding, treating it as a finding of fact, because the evidence did not compel the opposite or affirmative conclusion, and hence the negative conclusion was justified. The trial judge was not satisfied that the plaintiff had notice or was put upon such inquiry as would amount to notice, and, as the General Term reached the same conclusion, we cannot interfere, for there was some evidence to support it.

We have examined the other exceptions in the record and especially those relating to the admission of evidence, but we find nothing that calls for a reversal of the judgment appealed from, which must, therefore, be affirmed, with costs. .

All concur, except O'Brien, J., not voting.

Judgment affirmed, with costs.