CLARISSA WEATHERWAX CONKLING, Appellant, *v.* JOHN T. WEATHERWAX et al., Respondents, and EMILY A. TOMPKINS, Appellant, Impleaded with Others.

EQUITY — SUPERIORITY OF LIEN OF LEGACY CHARGED UPON REAL ESTATE TO THAT OF MORTGAGE GIVEN BY RESIDUARY DEVISEE — NEGLECT OF LEGATEE TO ENFORCE PAYMENT OF LEGACY. Legacies payable "out of my said farm by my executors," which farm, together with the personal property, was devised to the testator's son as residuary devisee *after* the payment of such legacies and other charges, but could not be sold or disposed of during the life of the widow without her consent, are liens upon the farm and are superior to the lien of a mortgage given by the devisee, during the life of the widow, upon his interest in the property although by his acceptance of the devise he became personally liable for the payment, and the legatees neglected to proceed against him, where it does not appear that the mortgagee has given actual notice to them of the mortgage, has requested them to proceed against the devisee or his estate in order to discharge the lien, and that he has suffered actual damage which could have been avoided by timely proceedings upon their part against the devisee.

*Conkling* v. *Weatherwax*, 66 App. Div. 617, reversed.

(Argued December 15, 1902; decided January 6, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 19, 1901, affirming a judgment in favor of defendant Hannah M. Hidley, entered upon a decision of the court at a Trial Term without a jury.

On May 8, 1868, Henry Weatherwax died leaving a last will and testament wherein, amongst other things, he pro-

vided for certain care and income and privileges to be furnished to his widow by his son, Charles Weatherwax, or the occupant of his farm after his decease, out of the profits of said farm, and also setting apart to his widow a part of his dwelling house.

He gave to his daughter Clarissa " The sum of one thousand dollars, to be paid to the said Clarissa S. Weatherwax two years after my decease, the same to be paid out of my farm, by my executor."

After the devise of certain specific articles to his daughter Emily, the will further provides as follows: " And finally the said Emily Ann Eliza shall be paid out of my said farm, by my executor, hereinafter named, the sum of one thousand dollars. * * * The one thousand dollars to be paid ten years after Clarissa S. is paid her one thousand dollars herein provided, or twelve years after my decease."

The will further provides as follows: " I also give and bequeath to my son Charles all my real estate and personal property after the payment of my just debts and funeral expenses, together with the expense of settling my estate, and the payment of the above-named legacies, to have and to hold the said farm and all remaining and unappropriated personal property, to him and his heirs and assigns forever, but my son Charles shall not have the right to sell or dispose of the said real estate during the widowhood of his mother without obtaining his mother's consent."

The testator in and by his will appointed his son Charles executor of his estate.

*Henry D. Merchant* and *Abel Merchant, Jr.*, for appellants. The unanimous affirmance by the Appellate Division has conclusively established the truth of the judge's findings of fact. (Const. of N. Y. art. 6, § 9 ; *People ex rel.* v. *Barker,* 152 N. Y. 417 ; *People* v. *Helmer,* 154 N. Y. 596 ; *Marden* v. *Dorthy,* 160 N. Y. 39 ; *Hilton* v. *Ernst,* 161 N. Y. 226 ; *Hay* v. *Knauth,* 169 N. Y. 298 ; *Krekeler* v. *Aulbach,* 169 N. Y. 372.) The theory on which the original order

of priority of the liens of the legacies and of the defendant Hidley's mortgage has been transposed is untenable either within the facts or as an abstract proposition of law. (*Sherman* v. *Foster*, 158 N. Y. 587 ; *Huffman* v. *Hulbert*, 13 Wend. 377 ; *Wheeler* v. *Benedict*, 36 Hun, 478 ; *Marsh* v. *Dunckel*, 25 Hun, 167 ; *H. M. Co.* v. *Farrington*, 82 N. Y. 121 ; *Carter* v. *White*, L. R. [25 Ch. Div.] 666 ; *H. Ins. Co.* v. *Halsey*, 8 N. Y. 271, 273 ; *Cheesebrough* v. *Millard*, 1 Johns. Ch. 409, 414 ; *Kendall* v. *Niebuhr*, 58 How. Pr. 156; *Patty* v. *Pease*, 8 Paige, 277.) That the legatees had adequate remedies at law or that they had acted to the prejudice of the defendant Hidley's rights are matters which were neither pleaded nor proven. (*Wright* v. *Delafield*, 25 N. Y. 266; *O'Toole* v. *Garvin*, 1 Hun, 92; *Center* v. *Weed*, 63 Hun, 560 ; *Converse* v. *Sickles*, 16 App. Div. 49; *Olivella* v. *N. Y. & H. R. R. Co.*, 31 Misc. Rep. 203 ; *Tripp* v. *Hunt*, 45 App. Div. 100 ; *Hammond* v. *Earle*, 58 How. Pr. 426 ; *Ostrander* v. *Weber*, 114 N. Y. 95 ; *Gage* v. *Lippman*, 12 Misc. Rep. 93 ; *Crisfield* v. *Murdock*, 127 N. Y. 315.) The charge of *laches* involved in the theory of the trial court as to the personal liability of Charles, upon which the judgment was based, is misleading, is unsupported by facts and is inconsistent with the express conclusions of law set forth in the decision. (*Wangner* v. *Grimm*, 169 N. Y. 421; *Krekeler* v. *Aulbach*, 169 N. Y. 372; *Wicks* v. *Thompson*, 129 N. Y. 634; *People* v. *Featherly*, 131 N. Y. 597; *Wright* v. *Wright*, 37 Mich. 55 ; *Paschall* v. *Hinderer*, 28 Ohio St. 568; *Prewitt* v. *Bunch*, 101 Tenn. 723 ; *Dugan* v. *O'Donnell*, 68 Fed. Rep. 983 ; *Ryder* v. *Emrich*, 104 Ill. 470 ; *Cox* v. *Stokes*, 156 N. Y. 511.)

*Robert E. Whalen* for respondents. The affirmance by the Appellate Division having been unanimous, and no exception to the admission or exclusion of evidence being presented, the sole question to be determined upon this appeal is whether the facts found by the trial court support the conclusions of law. (*Krekeler* v. *Aulbach*, 169 N. Y. 372, 374.) That the legatees have failed to exhaust their remedy upon the personal

liability of Charles Weatherwax for the payment of their legacies, and that by their *laches* that remedy has been lost to them, are facts which, by the unanimous affirmance, are conclusively established. (*Berger* v. *Varrelmann*, 127 N. Y. 281; *Chris. St. Ry. Co.* v. *Twenty-third St. Ry. Co.*, 149 N. Y. 51; *Adams* v. *Fitzpatrick*, 125 N. Y. 124; *Marden* v. *Dorthy*, 160 N. Y. 39.) Payment of the legacies was a personal obligation of Charles Weatherwax, and he became primarily liable therefor upon accepting the devise of the land. (*Brown* v. *Knapp*, 79 N. Y. 136; *Dodge* v. *Manning*, 1 N. Y. 298; *Kelsey* v. *Western*, 2 N. Y. 500; *Gridley* v. *Gridley*, 24 N. Y. 130; *Redfield* v. *Redfield*, 126 N. Y. 466; *Larkin* v. *Mann*, 53 Barb. 267.) The personal estate of Henry Weatherwax was not exonerated from payment of the legacies. (*Lupton* v. *Lupton*, 2 Johns. Ch. 614; *Hoes* v. *Van Hoesen*, 1 N. Y. 120; *Kelsey* v. *Western*, 2 N. Y. 500; *Hogan* v. *Kavanaugh*, 138 N. Y. 417; *Bushnell* v. *Carpenter*, 28 Hun, 19.) Upon taking her mortgage, Mrs. Hidley became entitled to insist that the legatees resort to the personal liability of the devisee and to the personal estate of the testator before proceeding against the land. (*Dodge* v. *Manning*, 1 N. Y. 298; *Kelsey* v. *Western*, 2 N. Y. 500; *Elwood* v. *Diefendorf*, 5 Barb. 398; *Towner* v. *Tooley*, 38 Barb. 398; *Loder* v. *Hatfield*, 71 N. Y. 92.) The legatees have lost their right to enforce the personal liability of Charles Weatherwax. (*Zweigle* v. *Hohman*, 75 Hun, 377; *Butler* v. *Johnson*, 111 N. Y. 204; *Schultz* v. *Morette*, 146 N. Y. 137.) The legatees have still a remedy against the personal estate of Henry Weatherwax. (*Goodwin* v. *Crooks*, 58 App. Div. 464; *Hulse* v. *Hulse*, 17 Civ. Pro. Rep. 92.) Having by their delay lost their remedy against the estate of Charles Weatherwax, the legatees must now resort to the personal estate of Henry Weatherwax, and they cannot proceed against the land to the prejudice of Mrs. Hidley. (*Stevens* v. *Cooper*, 1 Johns. Ch. 425; *De Peyster* v. *Hildredth*, 2 Barb. Ch. 109; *Ingalls* v. *Morgan*, 10 N. Y. 178; *Barnes* v. *Mott*, 51 How. Pr. 27.) The claims of the legatees are stale, and the legatees

have been guilty of such *laches* in attempting to enforce the same that equity will afford them no relief as against Mrs. Hidley. (*Dodge* v. *Manning*, 1 N. Y. 298; *Matter of Neilley*, 95 N. Y. 382; *Calhoun* v. *Millard*, 121 N. Y. 69; *Piatt* v. *Vattier*, 9 Pet. 405; *L., etc., Co.* v. *Locke*, 150 U. S. 193.) Mrs. Hidley's equities, based upon a valuable consideration, are superior to those of the legatees, arising out of a gift. (*Kelsey* v. *Western*, 2 N. Y. 500; 2 Pom. Eq. Juris. §§ 684, 685.)

PARKER, Ch. J. This controversy is over the priority of liens on certain real estate and is waged between the legatees of a testator on the one side and the mortgagee of his residuary devisee on the other. The courts below have held that the legacies are still liens and must be paid out of the proceeds of the sale of the real estate upon which they were charged by the testator, but not until after the payment of the amount secured by a mortgage given thereon by testator's devisee, his son, to whom the testator gave an interest in the farm after giving the legacies to his two daughters, directing the legacies to be paid out of the farm, the devise to the son being in the following words : " I also give and bequeath to my son Charles, all my real estate and personal property *after* the payment of my just debts and funeral expenses together with the expense of settling my estate, and the payment of above-named legacies." In other words, the judgment gives to the mortgagee of a devisee of the remainder after payment of legacies and other charges priority of payment over such legacies.

Our examination of the situation leads us to a different conclusion. Testator by his last will and testament gave to plaintiff and her sister legacies payable " out of my said farm by my executor." The will in terms, therefore, declares a lien upon the farm, which by a later provision of the will passes to his son Charles *after* payment of such legacies and other charges. This lien was created and recorded long before the mortgage came into existence, and the first inquiry

is: Were the legacies still liens when, on May 1, 1884, Charles gave a mortgage on his interest in the farm to defendant Hidley? They necessarily were unless (1) they had been paid, or (2) had become barred by some Statute of Limitations, or (3) the liens had been released by the legatees. It is found as a fact by the trial court that they had not been paid. There is neither finding nor evidence that the liens had been released. The Statute of Limitations had not as yet even started to run, because the will provided that the farm should not be sold during the life of the testator's widow without her consent, and also because there had not been a judicial settlement of the executor's accounts. (Code Civ. Proc., § 1819.)

It is clear, therefore, that the legacies were liens at the time when Charles gave to defendant Hidley a mortgage upon his interest in the property. And it was inferentially so found by the courts below, which held that the legacies are still a lien upon the farm, and entitled to payment next after the payment of the Hidley mortgage. The plaintiff's legacy and that of her sister, therefore, had been liens upon the farm by the express terms of the will for something like sixteen years before the giving of the Hidley mortgage, and it necessarily follows that such mortgage was at the time of its making a subsequent lien to those of the legatees which were created by the testator, for the mortgage lien was created by his devisee, whose rights in the property were by the testator subordinated to the liens of the legatees.

How, then, has it happened that these liens of the legatees have lost their priority? The legacies are still liens, for the Statute of Limitations has not run against them, and their priority cannot be taken away by a court of equity unless the legatees' conduct has been such that good conscience now requires that their priorities shall be surrendered to this mortgagee. There must at least be on the part of the legatees a failure to perform some duty which they owed defendant mortgagee by which the mortgagee lost some advantage which, but for the wrongful or neglectful act of the legatees, she would have had.

It is suggested that when Charles accepted the devise to him, as he did when he executed the mortgage to the defendant Hidley, he became personally liable to pay the legacies, and the legatees could have proceeded against him, and should have done so for the benefit of the mortgagee, inasmuch as failure to do so would operate to release some part of the security for the payment of their legacies.

It is not the rule, however, that a prior incumbrancer is bound at his peril to search for subsequent liens when about to release a part of his security, for, in order to impose upon him the obligation to regard this equity, his conscience must be affected by knowledge of the facts upon which the equity depends, or by notice sufficient to put him upon inquiry. (*Sherman* v. *Foster*, 158 N. Y. 587, 596 ; *Howard Ins. Co.* v. *Halsey*, 8 N. Y. 271, 273.) It was not sufficient for the defendant Hidley, therefore, to show that the legatees had lost remedies against Charles or against the estate in order to discharge the legatees' liens upon the farm to the extent of her mortgage; the liens being created by the will of the testator which was the same instrument under which Charles acquired his interest in the property. She had to go further and prove that the legatees had actual notice of her mortgage ; that she requested them to proceed against Charles and that she had suffered actual damage which could have been avoided by timely proceedings against him.

Nothing of the kind is to be found in the findings, nor was any evidence offered tending to establish any one of the three facts necessary to entitle the mortgagee to secure the aid of equity in giving her lien priority to that of the legatees, for actual and definite damage to her as the result of deliberate neglect by the legatees can alone justify equity in transposing the order of the liens against the legatees' protest.

The rule is otherwise where a legatee appeals to a court of equity to impress a lien upon the real estate of a testator in his favor, for then before equity will interfere it must appear that others will not suffer because of his delay in pursuing the personalty of a testator in those cases in which the per-

sonal estate is primarily liable, but in this case the aid of equity is not invoked by the legatees to impress a lien — that matter was attended to by the testator, who created a lien in advance of vesting the title in the devisee whose rights therein only were mortgaged to defendant Hidley.

The mortgagee had notice of the fact of the liens, for the will was recorded long before she acquired her mortgage. If she wished the legatees to press for collection such other securities as they had, in order to relieve to some extent the burden of their liens upon the mortgaged property, she should have informed them of her lien and made request for action on their part looking in that direction. She not only did nothing of the kind, but has failed to prove that the legatees would have secured a dollar had they resorted to all the remedies that the law gave them, and, hence, it does not appear that defendant mortgagee was ever damaged by the non-action of the legatees. There is no precedent in this state for the destruction of a lien created by operation of law or by a testator for the benefit of a subsequent lien under such circumstances, nor will established equitable principles admit of one.

The judgment should be reversed and a new trial granted, with costs to abide the event.

GRAY, O'BRIEN, BARTLETT and HAIGHT, JJ., concur; CULLEN and WERNER, JJ., absent.

Judgment reversed, etc.