# Farmers Production Credit Assoc. v. Rauch

*Richard H. Rauch*, for plaintiff.
*Randall W. Snyder*, for defendant.

KOCH, J., September 3, 1963.—Plaintiff instituted this action to quiet title, pursuant to Pa. R. C. P. 1061(2) and 1061(3), in which it requests the court to order defendant to accept the sum of $19,600.16 in full payment of a mortgage which is a lien on certain farm properties and to enter satisfaction thereof on the record, or, in lieu thereof, to allow plaintiff to pay said sum into court and to direct the recorder of deeds to enter satisfaction thereof.

Defendant filed an answer containing new matter and a counterclaim to which plaintiff filed a reply. Thereafter, a stipulation was filed which provided for a trial of the issue without a jury and another stipulation was entered into which contains 16 agreed statements of fact which were presented at the time of trial and are set forth in the first 16 findings of fact and embrace the history of the present controversy.

Based upon the agreed facts, the admissions in the pleadings and the testimony we make the following

### Findings of Fact

1. Plaintiff is an agricultural credit cooperative, chartered on January 3, 1934, under the provisions of the Farm Credit Act of 1933, having its place of business at 1160 North Seventh Street, Allentown, Lehigh County, Pa.

2. Defendant is an individual residing on Diamond Street, Slatington, Lehigh County, Pa.

3. A mortgage in the original sum of $24,000, bearing interest at the rate of five percent per annum, was given and executed by Harold J. Rauch and Leah L. E. Rauch, his wife, on April 10, 1952, to the Equitable Life Assurance Society of the United States, recorded in the Recorder of Deeds Office in and for the County of Lehigh on April 16, 1952, in Mortgage Book, vol. 607, at page 301, and being a lien on certain farm premises owned by the mortgagors, described therein, situate in Lynn Township, Lehigh County, Pa., which mortgage is incorporated herein by reference.

4. Defendant became the holder and owner of said mortgage by virtue of an assignment thereof given and executed by the Equitable Life Assurance Society of the United States dated April 17, 1958, and recorded on April 21, 1958, in miscellaneous vol. 257, page 561, which assignment sets forth a consideration thereof of $17,400, which assignment is incorporated herein by reference thereto. In addition thereto, defendant paid

to the assignor the additional sum of $1,125, representing interest on the principal balance of said mortgage of $17,400, at five percent from September 1, 1957, to April 22, 1958, together with real estate taxes levied on the premises subject to the mortgage and costs, all of which were chargeable to the mortgagors so that defendant paid a total sum of $18,525 for the assignment to him of such mortgage.

5. Plaintiff, on June 25, 1954, entered a judgment against Harold J. Rauch and Leah L. E. Rauch in the sum of $10,000, in the Court of Common Pleas of Lehigh County to June term, 1954, no. 300, which judgment was duly revived by an amicable sci. fa. to revive filed on May 27, 1959, to April term, 1959, no. 839.

6. The aforesaid judgment became a lien on the real estate subject to the mortgage referred to in paragraph 3 but subordinate to the lien of said mortgage.

7. On June 8, 1962, plaintiff issued a writ of execution on its aforesaid judgment against Harold J. Rauch and Leah L. E. Rauch, caused a levy to be made upon the same real estate subject to the aforementioned mortgage and the Sheriff of Lehigh County sold said premises at public sale on July 13, 1962.

8. At the aforesaid sheriff sale, plaintiff became the purchaser of the real estate and title thereto was conveyed to it by a deed of the sheriff dated August 7, 1962, and entered in the Recorder of Deeds Office in and for the County of Lehigh on August 23, 1962, in deed book, vol. 1021, page 236, which deed is incorporated herein by reference.

9. Title to the aforesaid real estate was taken by plaintiff, subject to the balance due upon the mortgage held by defendant referred to in paragraph 3 of this complaint.

10. On March 10, 1958, Leah L. E. Rauch, the then owner of one of the farm premises subject to the aforementioned mortgage, caused the same to be insured

under a fire insurance policy no. 62,627 issued by Home Mutual Fire Insurance Company of Lehigh County, to which policy was attached the standard Pennsylvania mortgagee clause naming defendant, William G. Rauch, and his wife, Florence M. Rauch, as first mortgagees.

11. On March 26, 1963, subsequent to defendant's acquisition of the aforementioned mortgage but prior to acquisition of title to the said farm premises by plaintiff under the aforementioned sheriff's deed, a barn on the real estate owned by Leah L. E. Rauch subject to such mortgage was destroyed by fire.

12. On April 10, 1962, the aforementioned fire insurance company issued a check in the sum of $4,000 in settlement of the fire loss, said check being payable to Leah L. E. Rauch, William G. Rauch and Florence M. Rauch.

13. Defendant, as mortgagee, made payment of the real estate taxes on the real estate subject to the mortgage for the years 1958, 1959 and 1960, in the total sum of $956.90.

14. Defendant, as mortagee, made payment of fire insurance premiums on policies insuring the improvements on the real estate subject to the mortgage in the sum of $256.

15. On November 30, 1962, plaintiff, through its attorney, tendered to defendant, through his attorney, the sum of $19,745.12 in full payment and satisfaction of such mortgage, and requested defendant's attorney to accept the same and cause satisfaction of such mortgage to be made on the records thereof.

16. Defendant, through his attorney, refused to accept the tender and refused to enter satisfaction except upon payment of $24,506.03, together with interest from October 21, 1962, to the date of payment.

17. The mortgage held by defendant contains the following provisions with respect to the disposition of

the proceeds of any moneys paid as a result of a fire loss to buildings erected on the mortgaged premises:

"In event of loss the mortgagee is expressly authorized and empowered to settle or compromise claims under said policies, and the proceeds from said policies as well as any other policies procured by the mortgagor shall be paid to the mortgagee who at its sole discretion may apply same or a part thereof on account of the indebtedness secured hereby whether or not then due and payable, or may apply the same or any part thereof towards the alteration, reconstruction or repair of said buildings, either to the portion damaged or any other portion thereof, *or release same to the mortgagor.*" (Italics supplied.)

18. The fire insurance policy originally covered three farms and was issued in the name of Harold and Leah Rauch. Two farms were held by Harold and Leah Rauch as tenants by the entireties; Leah Rauch, wife of Harold, held title to one farm in her name only which was known as the "Weaver" farm. The name of Harold Rauch was not deleted from the policy and still appears on it as an owner.

19. A barn on the "Weaver" farm was damaged by a fire on March 10, 1962, and the fire insurance company paid $4,000 to settle the claim on the policy to the mortgagees, William and Florence Rauch, and mortgagor, Leah Rauch, with a check made payable to all of them jointly on April 10, 1962.

20. Subsequent, June 7, 1962, to the payment of the $4,000 to the mortgagee and mortgagor, plaintiff issued execution on a judgment in its favor, it being a second lien and subject to the first mortgage of defendant. On July 13, 1962, the sheriff conveyed said mortgaged farm to plaintiff subject to said first mortgage.

21. Defendant mortgagee applied the $4,000 on a note of which Harold Rauch, one of the mortgagors, and husband of Leah Rauch, the other mortgagor, was

the maker and defendant mortgagee, endorser, for the purpose of establishing and maintaining a credit balance in the account of Harold Rauch in the National Bank of Slatington to provide the necessary funds to repair and improve the mortgaged property of Leah Rauch, one of the mortgagors, and for general farm purposes of both mortgagors.

22. The mortgagee and the mortgagors agreed that the said $4,000 should be applied to the account of Harold Rauch so that the moneys were available to make the said repairs and improvements.

23. Said moneys were applied to the account of Harold Rauch when the said Harold Rauch notes were endorsed by the mortgagee at those times when said endorsements were requested by the bank to credit the said Harold Rauch account, as had been the practice prior to and subsequent to the payment of said $4,000 on one of the Harold Rauch notes; the said mortgagor and mortgagee having agreed to this practice since 1959 with the Slatington bank. The mortgagee did this to make available the moneys needed to operate and maintain the farms of the mortgagors and against whom he held a mortgage.

24. The practice of maintaining a running account in the Slatington Bank to the credit of Harold Rauch was well established between the parties and was the method of providing the moneys needed by the mortgagors to operate and maintain their farms.

25. Harold Rauch used the sum of $4,000 from the said running account for the purpose of improving the building of the one mortgagor, his wife, Leah Rauch, to the extent of $3,239.73. Any moneys over and above this were allocated for the operation of the farm as had been the prior practice between the mortgagors and mortgagee.

26. The mortgagee, in applying the $4,000 on the note signed by Harold Rauch as maker for the purpose

of making it possible that the amount would be reflected in the account of Harold Rauch in the Slatington bank to be used for the improvement and operation of the mortgaged farm property, was done in pursuance of the mortgage contract giving the mortgagee the right to release the money to the mortgagors, Harold and Leah Rauch.

27. The mortgage was on three farms. The fire insurance on the one farm. Both Harold and Leah Rauch were obligated on the mortgage covering the three farms, and both were obligated on the "Weaver" farm, the title to which was in Leah's name only. No one was released from this obligation and their joint liability was in effect from the time the mortgage was signed by them to the time of foreclosure.

28. Plaintiff knew before his execution that a barn had burned down on the mortgaged property, that the fire insurance company paid $4,000 to mortgagor and mortgagee, that the $4,000 was not applied on the indebtedness of the mortgage. The mortgagee demanded the full amount of the mortgage prior to the execution of plaintiff when plaintiff offered to pay the mortage indebtedness.

29. Plaintiff knew that the first mortgage of defendant existed; that it was a public record; that under the terms of the mortgage, the mortgagee had the discretion to release the insurance proceeds to the mortgagor, and knew that the mortgagee did release the proceeds to the mortgagor when the money was applied on the mortgagor's note with the Slatington bank.

30. Plaintiff knew that the building of the mortgagor was being improved prior to execution and received the benefits of the improvements when he took title to the mortgaged property at the sheriff's sale.

31. The mortgagor and mortgagee agreed that the principal sum of the mortgage was $18,225 instead of $17,400, as indicated on the face of the mortgage.

Plaintiff knew prior to the execution that the principal of the mortgage was the agreed amount between the mortgagor and mortgagee and, therefore, took subject to the agreed amount when he secured title at the sheriff's sale.

32. Defendant was satisfied that he had ample equity in the land mortgaged with its improvements and, therefore, chose to give the insurance money to the mortgagor to be used for improving the farm and operating it, instead of applying it on the mortgage indebtedness or to restore the damaged building, the insurance on the "Weaver" farm being $8,650, but the value of the land covered by the mortgage with remaining improvements being between $27,000 and $28,000, the Hoffman tract comprising about 70 acres and the "Weaver" farm tract about 25 acres.

33. The advance by defendant of any money in payment of costs and attorney fees in litigation between the mortgagors and a third party to establish the right of the mortgagors to an easement leading to a portion of the farm subject to the mortgage is not litigation with third parties to protect the lien of the mortgage within paragraph six of the mortgage and cannot, therefore, be added to the mortgage debt.

34. That the following is an itemization of the actual moneys due from plaintiff to defendant on the mortgage obligation:

| | |
|---|---:|
| Principal | $18,525.00 |
| Interest 4/21/58 to 10/21/62 @ 5% | 4,168.13 |
| Real estate taxes 1958 and 1959 at $333.06 per year | 666.12 |
| Real estate taxes—1960 | 290.78 |
| Advanced fire insurance premiums, 1958 to 1962 | 256.00 |
| Total | $23,906.03 |

*Discussion*

Plaintiff in this action to quiet title is not a party to the fire insurance contract under consideration, nor is it a party to the mortgage covering the premises in question. The pertinent inquiry, then, is whether, in its capacity as a lien creditor, it has the right to question the disposition of the fund received by the mortgagee under the terms of a standard mortgage clause. The general rule as to the application of the proceeds is set forth in 36 Am. Jur. Mortgages, §331:

". . . mortgagee in possession of the proceeds of an insurance policy which must be applied to the payment of the mortgage debt stands in the relation of a trustee for the mortgagor. In such case, the mortgagee may not, without the consent of the mortgagor, apply the proceeds of the policy to any debt other than that secured by the mortgage. It is a general rule, however, that the application of the proceeds of an insurance policy on mortgaged property to something other than the satisfaction of the mortgage debt may be controlled by agreement between the mortgagor and mortgagee, *and that objection thereto may not be made by other secured or unsecured creditors of the mortgagor. . .*" (Italics suppled.)

In Stockton National Bank v. Home Insurance Co., 106 Kan. 789, 189 Pac. 913, the principle of the personal nature of insurance contracts was applied, where property was insured by the mortgagor for his own benefit with a loss payable clause in favor of the mortgagee, and the property was sold under foreclosure proceedings, it being held that the purchaser at the foreclosure sale, who was a second mortgagee, but was apparently regarded as standing in the same position as any other purchaser, could not maintain an action against the insurance company to recover the insurance, and had no claim to the proceeds thereof on the theory of assignment, or subrogation, or otherwise.

Our view that plaintiff cannot question the disposition of the insurance moneys is supported by First National Bank of Charleroi v. Newark Fire Insurance Company, 118 Pa. Superior Ct. 582, wherein the court was confronted with the interpretation of a standard mortgagee clause as relates to judgment creditors, third-party beneficiaries and the mortgagee himself. The court said, page 587:

"In the absence of a stipulation giving to the lien creditor who is made a beneficiary-payee higher rights than the insured owner, the former's right is a derivative one. The policy insures the owner, against loss of or damage to his building by fire, and it is provided, by a tripartite agreement, that the amount of his loss shall be paid to his lien creditor to the extent of the latter's interest as such; in other words, the owner has the right, as Mr. Justice Simpson says in Glen Campbell Bank v. Burnside Bank, 314 Pa. 536, at page 539, to have his property insured by a policy making the insurance money payable to his creditor; and it follows that, when he does so, the creditor takes through him, and recovers on the policy in the right of the insured owner only what the owner could himself have recovered, had the policy not been made so payable, unless the insurer has agreed that the creditor shall have a greater right."

Even if plaintiff be regarded as having the right to question the disposition of the proceeds, we are of the opinion that, under the terms of the mortgage itself, the proceeds were applied properly by defendant.

In summary form, the pertinent clause of the mortgage (see finding of fact 17) afforded the mortgagee three options to dispose of the proceeds in the event of a loss: (1) Apply them to the debt; (2) apply them to the repair of the damaged building, either to the portion damaged or any other portion thereof; or (3) release them to the mortgagor. The testimony clearly

shows that the moneys were not applied on options (1) or (2). We have found that they were released to the mortgagor even though the mortgagee may have received a benefit by being relieved of a secondary liability on a note held by the Slatington National Bank & Trust Company.

In concluding that the proceeds were "released to the mortgagor," it is important to observe that repairs costing $3,239.93 were made to the dwelling house before plaintiff's execution issued and that these funds came from a running account at the Slatington National Bank. These improvements to the real estate prior to the execution enured to the ultimate benefit of plaintiff. Since the property was improved, it would be inequitable to hold that plaintiff was also entitled to the proceeds of the insurance.

In Sherman v. Foster, 158 N. Y. 587, 53 N. E. 504, plaintiff foreclosed on his mortgage. Defendant's judgment creditors contested the application of fire insurance moneys received by the mortgagor and mortgagee from two fires prior to and at the time of execution on the mortgages, the mortgagor and mortgagee having agreed to the disposition of these moneys which did not include the judgment creditors, who contended that the mortgagee-plaintiff knew that they had judgments on the property and, therefore, in equity, plaintiff was obliged to apply the insurance moneys to protect their equity. The court said, at page 595:

"It was in the power of the mortgagor and mortgagee, as between themselves, to agree before the insurance money was paid that it should not all be applied on the mortgages. (Coles vs. Appleby, 87 N. Y. 114, 119.) Such an agreement was made in this case, and, as between the parties thereto, there is no doubt that the plaintiff was not obliged to apply upon his mortgages the sum paid out on Foster's orders. The debtor and the creditor can always agree as between

themselves upon the application of a sum paid by the former to the latter. The plaintiff had the right to release a part of his security so far as the mortgagor was concerned and to let him have a part of the insurance moneys."

No Pennsylvania decision has been called to our attention which decides the precise problem before us, but we deem Jarrett v. Walsh, 20 Montg. 147, as authority for our view that defendant applied properly the insurance proceeds. There, plaintiff foreclosed on a first mortgage. The purchaser at the sheriff's sale questioned the sheriff's distribution. It appeared that the mortgagor and mortgagee received an insurance check payable to both which was not applied on the debt. The court said:

"Miss Jarrett held the insurance policy as an additional security for her debt. The clause in the policy which gave her an interest in the loss that might be paid was a collateral security to her debt. When the fire occurred she was under no obligation to demand the money in the hands of the insurance company due for the loss. She did not receive it. The check was drawn to the order of herself and Mr. Walsh, the owner. This, no doubt, was done for the protection of the insurance company. She did not give any directions to have it drawn in that way. The money was received by Mr. Walsh, the owner, and he exercised full control over the fund. Where a person holds several securities we are not aware that the giving up of one satisfies the debt where there is no intent on the part of the debtor or creditor to give such effect to the release of the security. Even if Miss Jarrett had given a direction to use the money in restoring her mortgage security, we do not see how such direction could be treated as payment of the mortgage. This was one of the rights secured to her by the clause in the policy, and no doubt she took the policy for that very purpose, to wit, to secure the

continued value of the mortgaged premises. But there is no evidence that she exercised any such control over the insurance money.

"She gave up any claim she had to the insurance money, and allowed the owner to receive the fund as his own. She relinquished a collateral security. 'A person may, if he chooses, relinquish a collateral security altogether without the consent of other creditors of his debtor. It is a matter resting entirely between him and his debtor, with which others have nothing to do.': Dyott's Estate, 2 W. & S. 490; Jennings vs. Loeffler, 184 Pa. 318."

Little attention need be devoted to defendant's counterclaim with respect to an item designated "Advanced for Court Costs to Prescriptive Rights, $600". This claim is apparently based upon the sixth item of the mortgage which provides that the mortgagor shall pay on demand all expenses and attorneys' fees incurred by the mortgagee by reason of litigation with third parties to protect the lien of the mortgage.

The details of the counterclaim were not pleaded and the evidence presented was vague and indefinite and, consequently, we have made no findings with respect to it. We may also observe that defendant has submitted no conclusion of law concerning this matter.

Our decision is based upon the following

*Conclusions of Law*

1. The interest of the mortgagee under the standard fire insurance clause is based on a contract with the insurance company that fire insurance proceeds are paid to him as security for his investment in the mortgagor's property. A subsequent judgment creditor is not in privity with this contract, nor is he a third-party beneficiary. The contract simply agrees to indemnify the owner for loss of property and also to insure the mortgage holder as his security for his investment.

2. The mortgagor and mortgagee had a legal right to agree as to the disposition of the fire insurance moneys received by both of them, as the fire insurance was only collateral for the mortgagees' investment in the mortgaged property.

3. Plaintiff, when he received title to the mortgaged property, was bound by all the terms of the mortgage as they appeared on record in the recorder's office. Under the fourth item of the mortgage, he was bound to know that the mortgagee had the right to release the proceeds from the fire insurance to the mortgagor, said insurance proceeds being subject to the terms of the mortgage.

4. The equity of the judgment creditor, if any, in the fire insurance proceeds is more than offset by the equity he gained when the mortgagor and mortgagee applied the insurance moneys to improve the mortgaged property, the judgment creditor having received the benefit of these improvements when he purchased the mortgaged property at the sheriff's sale.

5. When the mortgagee applied the proceeds of the check on a note signed by Harold Rauch, one of the mortgagors, he released the proceeds to the mortgagor, as it was the intention of the parties that the mortgagor would then have the credit in his account which he needed to carry out the agreement between the parties, mortgagors and mortgagees, that the proceeds would be applied to improve the Leah Rauch, one of the mortgagors, farm and also to operate the mortgaged farm.

### Order

Now, September 3, 1963, the foregoing decision is ordered filed and if no exceptions are filed thereto within 20 days after respective counsel have been served with notice of such filing, defendant is ordered to satisfy of record plaintiff's mortgage recorded in mortgage book vol. 607, page 301, upon the payment of

$23,906.03, together with interest at five percent on the principal balance of $18,525 from October 21, 1962, to the date of satisfaction of the said mortgage.