ADOLPH C. WAPPLER, Respondent, *v.* THE WOODBURY
COMPANY, Appellant.

Equity — judgment — assignment — plaintiff    must    have
cause of action for some relief at commencement of suit —
assignee of judgment, while another assignment is outstand-
ing, may not recover in action to enforce judgment on theory
that pending action title to judgment was by a default revested
in assignor — title to judgment not revested in assignor by
failure of first assignee to make payment due pending action —
plaintiff's interest subject to that of prior assignee.

1. Even in courts of equity, the general rule is that a plaintiff must
have a cause of action for *some* relief at the commencement of his suit.
Such a right existing, the extent of the relief will be adapted to the
situation at the time of the decree.    The rule may be subject to excep-
tions in the interests of justice but there will be no departure there-
from to work an unrighteous forfeiture or to cause justice to miscarry.

2. In the circumstances of this case a buyer did not forfeit his right
to shares of stock by failing to make payment for them while the
present suit was pending.

3. The buyer was at liberty to suspend performance on his part
while the seller in defiance of his bargain was enforcing the judgment
which is the basis of this action.    There was not even a technical
default, and still less such a default as equity would use as the basis
of a forfeiture.

4. Plaintiff's interest in the judgment, if any, is subject to that of
the prior assignee.    The earlier interest did not terminate auto-
matically without reassignment or foreclosure, and the holder of that
assignment is a necessary party to the determination of the controversy.

*Wappler* v. *Woodbury Co.*, 218 App. Div. 754, reversed.

(Argued June 2, 1927; decided July 20, 1927.)

APPEAL, by permission, from a judgment of the Appel-
late Division of the Supreme Court in the first judicial
department, entered November 5, 1926, unanimously
affirming a judgment in favor of plaintiff entered upon
a decision of the court on trial at Special Term.

*William H. Chorosh* and *H. H. Nordlinger* for appellant.
The plaintiff Wappler never acquired legal title to the

1912 judgment. (*Reed* v. *Barkley*, 123 Misc. Rep. 635; *Herribin* v. *Malackowski*, 113 Misc. Rep. 100; *Dingley* v. *Bon*, 130 N. Y. 607; *Dunn* v. *Dunn*, 151 App. Div. 800; *Moore* v. *LeMaire*, 169 App. Div. 154.) The rule that equity will shape its relief according to the situation existing at the time of the trial does not justify the judgment appealed from. (*Sherman* v. *Foster*, 158 N. Y. 587; *Shepard & Morse Lumber Co.* v. *Hurd*, 55 App. Div. 627; *Banigan* v. *Village of Nyack*, 25 App. Div. 150; *Farmers' Loan & Trust Co.* v. *United Lines Telegraph Co.*, 47 Hun, 315; *Tiffany* v. *Bowerman*, 2 Hun, 643; *Staunton* v. *Swann*, 10 Civ. Pro. Rep. 12.) There is a defect of necessary parties to the action. (*Hood* v. *Hood*, 85 N. Y. 561; *Ridgway* v. *Balsen*, 72 Hun, 211; *Mahr* v. *N. U. F. Ins. Soc.*, 127 N. Y. 452; *Cook* v. *Lake*, 50 App. Div. 92; *Shaver* v. *Brainard*, 29 Barb. 25.)

*Keyes Winter* and *John C. Pemberton* for respondent. The plaintiff is entitled to a judgment in equity upon the facts as they are established at the time of the trial and not as of the date of filing of his complaint. (*Breckenridge* v. *Carey*, 195 App. Div. 156; *Merrihew* v. *Kingsbury*, 15 App. Div. 40; *Ne-ha-sa-ne Park Assn.* v. *Lloyd*, 25 Misc. Rep. 207; 45 App. Div. 631.) The courts below properly rendered judgment without directing C. Palmer Woodbury to be brought in as a party. (*Matter of Boucker Co.* v. *Callahan Co.*, 218 N. Y. 321; *Woodward* v. *Holland Medicine Co.*, 21 Civ. Pro. 23.)

CARDOZO, Ch. J. In 1918, Robert Buggeln, for whom plaintiff is a " dummy " or an agent, sold to William A. Woodbury the entire capital stock of the Woodbury Company. The chief value of the stock was dependent upon the ownership of trade-marks then in litigation. Another corporation, the Andrew Jergens Company, made claim to them as owner. Accordingly there were provisions in the contract whereby the terms of payment

for the stock were proportioned to the menace of the
suit. The total price was to be $6,000, of which $500
was paid in cash. The residue, $5,500, was not to be
paid at all unless the Woodbury Company prevailed in
its contest for the trade-marks. In the event of a final
determination in its favor, $1,000 was to be paid within
ninety days and the balance, $4,500, within fifteen months
thereafter. There was, however, another menace in addi-
tion to the challenge of title to the trade-marks. A
judgment for $15,000 had been entered against the com-
pany. Buggeln held this judgment for his own use in
the name of his brother-in-law Clinton. To enforce it
would wipe out the value of the shares. An agreement
was, therefore, made whereby this judgment was assigned
to one Hart, a " dummy " for Woodbury. If Woodbury
paid the $5,500, the judgment was to be canceled. If
Woodbury defaulted in payment, the stock and the
judgment were to be given back to Buggeln or Buggeln's
nominee.

The United States District Court decided the trade-
mark litigation in favor of the Woodbury Company.
Payment for the stock was not yet due, for there was
an appeal from the decree, and payment was not to be
made until final determination. Even so, the rendition
of the decree was a signal, it seems, to Buggeln to try
to regain his shares by one method or another. At that
time William A. Woodbury had assigned the shares to
C. Palmer Woodbury, who also received from Hart an
assignment of the judgment. Buggeln brought a suit in
the Supreme Court to rescind and cancel his sale of the
shares upon the ground that the resale was a violation
of a term of the agreement. The Supreme Court decided
this suit against him. On the very day that the decision
was announced he turned to new devices. His brother-
in-law, Clinton, had already assigned the $15,000 judgment
to Hart, Woodbury's nominee, who had assigned to
C. Palmer Woodbury. Without a shadow of right,

Buggeln, on the very day of the adverse decision, executed and filed another assignment of this same judgment, to a second "dummy," Wappler, the present plaintiff. Upon the basis of his pretended ownership of this judgment, Wappler brought this suit to enforce the judgment against the defendant corporation, to sequester its assets, and to wind it up by a receiver.

The suit was begun June 27, 1922. Not till October 23, 1922, did the Supreme Court of the United States dismiss the writ of cerciorari in the trade-mark litigation. Ninety days thereafter, January 21, 1923, the first payment for the stock, $1,000, would be due under the contract. Fifteen months thereafter, April 21, 1924, would be the time for the payment of the balance. This action was tried in March, 1924, and the decision made in June, 1925. Pending the action, Wappler assigned his judgment to the Andrew Jergens Company, which, defeated by its rival in the trade-mark litigation, was attempting by a flank movement to regain the lost ground. The Supreme Court at Special Term gave judgment for the sequestration of the assets and the appointment of a receiver as prayed for in the complaint. It conceded in its opinion that no cause of action was in existence when the action was begun. The plaintiff at that time had no title to the judgment. The owner was C. Palmer Woodbury, who has not been joined as a defendant. No default had yet been made in the payment of the purchase money for the stock, for nothing was yet due. The court held, however, that default had come about through the failure to pay the installments accruing under the contract while the sequestration suit was pending. The effect of this default, according to the holding of the court, was automatically to revest the title to the judgment in Buggeln or his nominee. The principle was then invoked that equity will adapt its relief to the facts as they exist at the date of the decree. Under cover of that principle, applied at times

[246 N. Y. 152]     Opinion, per CARDOZO, Ch. J.                    [July,

by courts of equity to advance the ends of justice, an action, begun without shadow of right, in a transparent attempt to evade and avoid the obligation of a contract, has been carried to a triumphant judgment. Upon appeal to the Appellate Division, there was a unanimous affirmance.

We state without elaboration the reasons for a different holding.

1. The general rule is, even in courts of equity, that a plaintiff must have a cause of action for *some* relief at the commencement of his suit (*Sherman* v. *Foster*, 158 N. Y. 587, 593; *Bartlett* v. *N. Y., N. H. & H. R. R. Co.*, 226 Mass. 467, 471). Such a right existing, the extent of the relief will be adapted to the situation at the time of the decree. We do not now decide that the rule may not be subject to exceptions in the interests of justice. Cases of genuine misconception as to the accrual of a right or those where the discrepancy is trivial or others where the hardship is special or unusual, must be dealt with when they arise. What is certain is that there will be no departure from the rule in order to work an unrighteous forfeiture or to cause justice to miscarry. The plaintiff was not a judgment creditor at the commencement of the suit. He took the assignment of the judgment without right while an earlier assignment was outstanding in the hands of Woodbury. He did this under the orders and as the representative of Buggeln to the end that Woodbury, the buyer of the stock, might be placed in the dilemma of making default under the contract or throwing good money after bad. Not in aid of such designs does equity revise and enlarge its malleable remedies.

2. The buyer of the shares did not forfeit his right to them, nor revest in the seller the title to the judgment, by failing to make payment while the present suit was pending.

Buggeln and Woodbury had agreed that the judgment

was to be canceled when the purchase money for the shares was paid, and that nothing was to be done to enforce it in the interval. To secure fulfillment of that agreement, the judgment was assigned to the buyer's nominee. Buggeln, ignoring this assignment, made a second assignment to the plaintiff, who holds for Buggeln's use. He is thus before the court enforcing the very judgment which was to belong absolutely to the buyer of the shares upon payment of the price, and yet complaining that the price was not paid to him with punctual exactness at a time when he was repudiating his agreement as to the enforcement of the judgment. The shares were without value unless the judgment was surrendered. We think the buyer was at liberty to suspend performance on his part while the seller was enforcing the judgment in defiance of the bargain (2 Williston, Sales, sec. 467-e; *Anderson* v. *Hayes Construction Co.*, 243 N. Y. 140, 148). The omission to make punctual payment in such circumstances was not even a technical default. Even if it was, it was certainly not one to be used in a court of equity as the basis of a forfeiture (*Noyes* v. *Anderson*, 124 N. Y. 175, 179, 180; *Noyes* v. *Clark*, 7 Paige, 179; 2 Williston, Contracts, sec. 769).

3. The plaintiff's interest in the judgment, if he has any, is subject to that of Woodbury under an assignment prior in time. The earlier interest did not terminate automatically without reassignment or foreclosure. The holder of that assignment is a necessary party to the determination of the controversy.

The judgment of the Appellate Division and that of the Special Term should be reversed, and the complaint dismissed, with costs in all courts.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.