SAMUEL J. MARKS, Appellant, *v.* BELLA MARKS, Respondent.

First Department, March 12, 1937.

*Joseph J. Kozinn* of counsel [*Horstmann & Kozinn*, attorneys], for the appellant.

*Maurice Leffert*, for the respondent.

Glennon, J.   This action was instituted by the plaintiff for an accounting, and also to impress a trust upon funds deposited by the defendant in her name in a savings bank.

Plaintiff and defendant were married September 1, 1924, some-time after the death of plaintiff's first wife.   There is no issue of the marriage.   The plaintiff is the father of two children by the former marriage.   Plaintiff, his children and the defendant lived together in apparent harmony until a short time before defendant left plaintiff's abode on September 3, 1934.

During the latter part of their married life difficulties in which the children were in no way involved occurred between the parties. The defendant instituted an action for a separation and was granted a decree in which she was allowed alimony at the rate of twelve dollars per week.   It should be noted here that there is nothing in the present record, other than the statements made by counsel at the opening of the trial, to indicate whether or not the court, in making the award of alimony either temporary or permanent, took into consideration the money which is the subject-matter of this action.

The facts which we gather from the record are, in substance, as follows: Plaintiff was employed as an agent for an insurance company.   When times were good his earnings averaged from $100 to $200 per week.   In those days he made a weekly allowance of from fifty dollars to sixty dollars for the household.   In addition thereto, when the circumstances warranted, he turned over extra money to his wife.   She opened an account on June 29, 1926, in the Bronx Savings Bank.   The moneys which she deposited in the bank from time to time represented the balance which was left on hand after paying the necessary expenses.   It is not claimed by the defendant that plaintiff made a gift to her of the fund which she deposited.   Had she done so, and had the trial justice so found, of course that would have ended this litigation.   What she did say in referring to the ownership of the bank account was: " Well, I intended that it was for all ours, all the family; I did not make any special —

" Q. Well, you thought in the bank it might come in handy in the family, is that it?   A. Yes.

" Q. But there was never any promise that you would hold it for him?   A. No sir; there never was any such understanding, only what I have the bank account for, in the event of sickness, or something happens."

Apparently, the theory upon which the defendant claimed owner-ship to the funds might be summed up in her own words: " I did my own work and I did all the washing for the house and naturally I

economized.   If I had more, that is, I accumulated, and as I had
it, I felt that I had enough, that I ought to deposit and not keep
it about, too much; I deposited it."   The difficulty with this con-
tention is that the funds primarily belonged to the husband and
he was under no obligation whatever to pay for the services rendered
by his wife in connection with her household duties.   In *Blaechinska*
v. *H. Mission & Home* (130 N. Y. 497) Judge VANN, in referring
to this general subject, wrote in part as follows: " Such services
as she does render him, whether within or without the strict line of
her duty, belong to him.   If he pays her for them it is a gift.   If he
promises to pay her a certain sum for them, it is a promise to make
her a gift of that sum.   She cannot enforce such a promise by a
suit against him.   We think the rule is well stated by a recent writer
when he says that the enabling acts do not apply to the labor per-
formed by a married woman ' for her husband, or bestowed on his
business, or in his household, or in his care, or in the care of his
family, for in such cases it is her marital duty and he is not liable
to pay for the services of his wife.'   (Kelly's Contracts of Married
Women, 153.)"

The plaintiff in his complaint asked that the entire fund should
be impressed with a trust in his favor.   However, on the trial in
answer to a question by the court he said that he did not claim it
all.   Further, he quoted his wife as saying, apparently with his
approval, that the money was placed in the bank " for our old age,"
and again, it was " our savings."   It is fair to assume that what
the plaintiff had in mind was that the account was opened and the
money placed in the bank by the defendant for the benefit of both
parties.   In trying to determine what their intentions were, we
should look to the circumstances as they existed while peace and
happiness reigned in the family before any controversy arose.
Now that the parties have been legally parted and have decided
to go their separate ways, it would seem proper to treat the fund
in the same manner that any partnership asset would be handled
upon the dissolution of a firm, *i. e.*, with all things being equal, to
divide it evenly between plaintiff and defendant.

We believe it proper to direct a new trial of this case in order that
all the facts may be developed and a proper decree entered.   We
do not know from the proofs submitted whether or not a temporary
award of alimony was made or by whom counsel fees were paid.
Mindful of the fact that these parties lived separate and apart at
the time the action for a separation was instituted until the final
decree was granted, the obligation to support the wife in the event
no alimony was allowed would have rested upon the husband.
(*McCarthy* v. *McCarthy*, 143 N. Y. 235; *Harris* v. *Harris*, 259 id.

334; *Doncourt* v. *Doncourt*, 245 App. Div. 91.) We make this statement simply because it should be taken into consideration in the event an accounting is ordered. What facts may be developed we do not know.

Even though the plaintiff originally demanded the entire fund, still, a court of equity may and generally does adapt the relief to the situation existing at the time of the decree. In *Wappler* v. *Woodbury Co.* (246 N. Y. 152, at p. 156) Chief Judge CARDOZO said in part: " 1. The general rule is, even in courts of equity, that a plaintiff must have a cause of action for some relief at the commencement of his suit (*Sherman* v. *Foster*, 158 N. Y. 587, 593; *Bartlett* v. *N. Y., N. H. & H. R. R. Co.*, 226 Mass. 467, 471). Such a right existing, the extent of the relief will be adapted to the situation at the time of the decree. We do not now decide that the rule may not be subject to exceptions in the interests of justice. Cases of genuine misconception as to the accrual of a right or those where the discrepancy is trivial or others where the hardship is special or unusual, must be dealt with when they arise. What is certain is that there will be no departure from the rule in order to work an unrighteous forfeiture or to cause justice to miscarry."

Accordingly the judgment should be reversed and a new trial ordered.

MARTIN, P. J., TOWNLEY, UNTERMYER and DORE, JJ., concur.

Judgment unanimously reversed and a new trial ordered.