MARY MACFADDEN, Plaintiff, *v.* BERNARR MACFADDEN, BERNARR MACFADDEN FOUNDATION INC., FULTON OURSLER and Others, Individually and as Members and Directors of BERNARR MACFADDEN FOUNDATION INC., Defendants. *

Supreme Court, Trial Term, New York County, November 23, 1938.

*Affd., without opinion,— App. Div. —.

*Garfield & Seligson* [*Harold H. Corbin* of counsel], for the plaintiff.

*Arthur Garfield Hays*, for the defendant Bernarr Macfadden.

*Mayer C. Goldman* and *Theodore Kiendl*, for the defendant Bernarr Macfadden Foundation, Inc.

MILLER, J. Plaintiff and defendant Bernarr Macfadden are husband and wife and were married in England on March 5, 1913, while on a business tour of England. The tour ended on July 4, 1913. Plaintiff claims that upon the conclusion of the tour the plaintiff and the defendant, about August, 1913, opened up a health home in Brighton, England. She claims that at that time her husband had not paid her a prize amounting to £100, which she had previously won, and one-half of the proceeds from the sale of postal cards containing portraits, which defendant had promised to pay plaintiff. She claims that in January, 1914, while the health project was being conducted in Brighton, she went to France on a vacation and that she remained there for about two or three months.

The plaintiff claims that the project at Brighton was operated until 1914 and resulted in a profit of about $5,000 and that when the project was started the defendant promised to pay her one-half of the profits for her assistance in the operation thereof.

At the time of the alleged arrangement, hereinafter mentioned, and which is the basis of this action, the defendant was the owner of various corporations and various publications owned by various other corporations and also had published an encyclopedia on physical culture. At that time the plaintiff was about twenty years of age and her husband forty-two.

The plaintiff and the defendant came to America in 1914 and the plaintiff claims that on Thanksgiving Day of 1914, while the plaintiff and the defendant were walking, they had the following conversation. I quote from the record: " Mr. Macfadden said ' You are to be my business partner because you must exemplify everything I believe in and everything I teach.' We were going to build up together and it was to be my duty to cooperate with Mr. Macfadden to put over his message. We were to be partners for life, fifty fifty in everything we did. Our profits from the Brighton Institution had amounted to a thousand pounds and that we put our joint partnership there into our ventures in this country. Mr. Macfadden said ' When you have your next child, you cannot have a doctor. You must have a midwife.' Mr. Macfadden said

he should be the manager and take care of the purse strings at all times because he was the boss. I should do my share of the work of the partnership but he should handle the assets of the partnership. ' We must have a physical culture family. We will teach the world to become strong and healthy and the children must exemplify my teachings and my beliefs and my ideas. This is part of your partnership.' We were to share equally, share and share alike, our profits and losses, success or failure, and with that Mr. Macfadden and I agreed that that was what we were going to do in the future. Mr. Macfadden said he wanted me to learn everything I could about the business. Mr. Macfadden said ' Is that a go? Is that a pact?' And I said, ' yes.' "

In the complaint and bill of particulars, the arrangement is alleged to have been as follows: " An agreement of partnership for the duration of their natural lives under the terms whereof the parties agreed to promote and expound to the public, through the sale, education and publication of books, magazines and periodicals, through the operation of health resorts; and through their personal precept, the science of physical culture."

The sale, education and publication of books, magazines and periodicals, or the operation of health resorts is not mentioned in the plaintiff's alleged conversation with the defendant (in November, 1914) at the time the alleged agreement was made. The plaintiff asserts an agreement of partnership *for life.*

After a lapse of over twenty years no writing is presented which corroborates her claim in the slightest degree. The only writings in existence negative any such arrangement and these were made by her.

She claims that it was agreed that she should receive for life one-half of the profits of her husband's business in her own individual right.

It must be assumed that this right to one-half of the profits was in addition to her right to compel her husband to provide a home and to support her for life and the children of the marriage during their minority, no matter how large the family would be, during their mutual lives, and that this right to support was to come from the husband's half of the profits.

Plaintiff's testimony is tantamount to a claim on her part that when the alleged partnership was formed, the defendant gave to the plaintiff a one-half interest in all of the profits thereafter realized by him from the corporation and publications then owned by him and in addition a one-half interest in all other profits thereafter earned by him from any new ventures.

She claims that part of the consideration for defendant's promise to pay her half of the profits made by him during his life was her

alleged contribution of a sum equal to one-half of the profits of the Brighton operation, which remained unpaid.

This constituted no consideration for the alleged partnership, as there was then, in law, nothing owing to her under the common law, as will hereafter be shown.

The arrangement alleged to have been made by the defendant with the plaintiff in England in 1913, after her marriage to the plaintiff, was not enforcible.

The defendant was not liable to the plaintiff for any services rendered by her while in England. She, therefore, did not make any contribution to the arrangement alleged to have been subsequently made. Nor was there any consideration for the alleged promise of the defendant, alleged to have been made in November, 1914, to pay the plaintiff for the services to be rendered by her during their mutual lives.

In *Blaechinska* v. *Howard Mission & Home* (130 N. Y. 497, at p. 502) the court held: " The enabling statutes do not relieve a wife of the duty of rendering services to her husband. While they give her the benefit of what she earns, under her own contracts, by labor performed for anyone except her husband, her common-law duty to him remains and if he promises to pay her for working for him, it is a promise to pay for that which legally belongs to him. The fact that he cannot require her to perform services for him outside of the household does not affect the question, for he could not require it at common law. Such services as she does render him, whether within or without the strict line of her duty, belong to him. If he pays her for them it is a gift. If he promises to pay her a certain sum for them, it is a promise to make her a gift of that sum. She cannot enforce such a promise by a suit against him. We think the rule is well stated by a recent writer when he says that the enabling acts do not apply to the labor performed by a married woman ' for her husband, or bestowed on his business, or in his household, or in his care, or in the care of his family, for in such cases it is her marital duty and he is not liable to pay for the services of his wife.' "

In *Stevens* v. *Cunningham* (181 N. Y. 454, at pp. 460, 461) the court says: " In *Blaechinska* v. *Howard Mission & Home* (130 N. Y. 497) the law applicable to the case at bar is very fully recognized in the opinion of VANN, J. * * * The opinion discussed the authorities very thoroughly and the following statements are found therein (p. 501): ' It seems to be the policy of the Legislature, as indicated by recent amendments, to relieve every married woman of the disability of coverture on contracting with anyone except her husband.' At page 502, the case of *Brooks* v. *Schwerin* (54,

N. Y. 343) is discussed and the court says: ' The distinction between that case and this is that in the former the wife worked for a third person, while in the latter she worked for her husband. When she worked for the stranger it was on her sole and separate account, and the enabling act protected her contract. When she worked for her husband it was on his account and the statute did not apply.' This last quotation laid down the law applicable to the case at bar very clearly."

*Stevens* v. *Cunningham* (*supra*) was decided in 1905. In 1892 chapter 594 was enacted. This statute read in part as follows: " A married woman may contract with her *husband* or any other person to the same extent, with like effect and in the same form as if unmarried." (Italics the court's.)

In 1896 this statute was re-enacted in chapter 272, section 21, and was in existence at the time *Stevens* v. *Cunningham* (*supra*) was decided.

In *Martin* v. *Bronx County Trust Co.* (237 App. Div. 246, 247), where the court dismissed an action to recover upon an implied promise of a husband to pay the wife for services rendered in the management and operation of rooming houses owned by the husband, the court states: " It was held in the case last cited [referring to *Stevens* v. *Cunningham, supra*] ' that notwithstanding the enabling statutes conferring valuable personal and property rights upon married women, they have no effect upon those duties which a wife owes to a husband at common law in the marriage relation.' " (See, also cases cited in *Martin* v. *Bronx County Trust Co., supra*.)

In *Matter of Smith* (291 Fed. 587, 588) the court held: " The common-law unity of husband and wife still obtains in this State to the extent that a husband is not liable for services rendered by his wife, and his contract to pay her for such services is against public policy and void." (See to same effect *Matter of Kaufmann*, 104 Fed. 768.)

It is also clear, therefore, that the capital which the plaintiff was " to put " into the partnership as her share of its capital was not her property, the ownership thereof being in the defendant. The plaintiff had no proprietary interest in the health project in Brighton, England, or any interest in the profits of that project.

There is also nothing in the conduct of the parties as shown by the testimony during the period of over sixteen years which would indicate the existence of a partnership.

The alleged arrangement refers (1) to her alleged contribution and (2) to her promise to perform services.

Her alleged contribution was no valid contribution and her promise to perform services was too vague and indefinite to con-

stitute a valid promise, in view of those duties which a wife owes to her husband in the marriage relation.

The purported arrangement of copartnership is also lacking in any statement with respect to the name of the partnership, the capital to be supplied, the extent of the business to be transacted, the manner in which it is to be done, and the duties of the several parties thereto. The alleged arrangement for the duration of their lives, even if it was made, is also so vague and indefinite as to what it covers and as to what plaintiff was required to do as to be unenforcible. (*O'Reilly* v. *Gerry*, 249 App. Div. 850; *Varney* v. *Ditmars*, 217 N. Y. 223.)

The motion of the defendants to dismiss the complaint on the merits is granted with an exception to the plaintiff.