SAMUEL CASPERT et al., Plaintiffs, *v.* ANDERSON APARTMENTS, INC., et al., Defendants.

Supreme Court, Special Term, New York County, November 2, 1949.

*Benjamin Miller* for plaintiffs.

*David Berg, William L. Messing* and *Jack M. Perlman* for defendants.

ISIDOR WASSERVOGEL, Official Referee. This is an action to foreclose a mortgage affecting premises known as 102 West 80th Street, New York City. Plaintiffs claim that the defendant mortgagor has failed to comply with a provision in a mortgage extension agreement which required that all violations against the premises be complied with and removed within three months after they had been filed by the appropriate authorities. Defendants concede that certain violations were not cured within the time limit set forth in the mortgage extension agreement. They contend, however, that the plaintiffs are guilty of laches, that they have waived the requirement set forth in the mortgage extension agreement by their failure to act within a reasonable time, and that, in any event, a forfeiture as a result of foreclosure in the circumstances involved herein would be so unconscionable and oppressive as to warrant the intervention of equity to deny the relief sought by plaintiffs.

The records of the department of housing and buildings indicate that violations were placed on the premises as early as February, 1947. Additional violations were filed in June and September, 1947, and also in January, February, and May, 1948. As the first violation was filed in February, 1947, under the three months' provision of the mortgage extension agreement, the first default occurred in May, 1947. The record indicates that plaintiffs took no notice of the default until some time in 1948. They continued to accept payments due on the mortgage throughout 1947 to August, 1948, although they did request the prior owner, in January, 1948, to remove the violations which had been filed at that time. On August 4, 1948, the defendants took title to the premises involved, subject to all existing violations. Thereafter, by letter dated October 7, 1948, plaintiffs formally declared their intention to foreclose the mortgage because of the defendants' failure to remove the violations within the three-month limitation set forth in the extension agreement. The instant action was, however, not commenced until December 1, 1948.

Plaintiffs have cited many cases dealing with default, acceleration, and foreclosure in support of their position, but have particularly emphasized the case of *Graf* v. *Hope Bldg. Corp.* (254 N. Y. 1). This case, decided in 1930 by a divided court of four to three, held that, in the absence of fraud, bad faith, or unconscionable conduct, a mortgagee was entitled to enforce its contract rights to accelerate payment of a mortgage and refuse tender of interest, which, as a result of errors and omissions of employees of the mortgagor, was not made until the expiration of a twenty-day grace period. This decision is marked by a

vigorous dissenting opinion by Chief Judge CARDOZO, concurred in by Judges LEHMAN and KELLOGG. The *Graf* case (*supra*) was subsequently followed in 1938 in *Ferlazzo* v. *Riley* (278 N. Y. 289, 292), in which the Court of Appeals again pointed out that " in the absence of waiver  *  *  *  or estoppel, or bad faith, fraud, oppressive or unconscionable conduct " on the part of the mortgagee, the contract rights will be strictly enforced. It becomes necessary, therefore, even under the cases cited by plaintiffs, for the court to first determine whether the conduct of plaintiffs falls within one of the foregoing categories before their contractual rights under the mortgage extension agreement will be enforced (*Graf* v. *Hope Bldg. Corp.*; *Ferlazzo* v. *Riley, supra*; *Domus Realty Corp. v. 3440 Realty Co.*, 179 Misc. 749).

As above stated, the defendants acquired title to the premises on August 4, 1948. Violations had been filed against the premises more than eighteen months prior to this time but the plaintiffs nevertheless failed to exercise their rights to acceleration and foreclosure throughout this entire period. Defendants, on the other hand, upon taking title to the building, expeditiously set about removing the violations and also making certain alterations in the premises. In the middle of August, 1948, the defendant, Anderson Apartments, Inc., hired an architect, who proceeded to prepare plans for the cure of the violations. Such plans were filed with the department of housing and buildings on August 25, 1948, just three weeks after the defendants became owners of the building. The plans were approved by the proper governmental agencies on October 7, 1948. Prior to plaintiffs' notice to the defendants of their election to foreclose, defendants had expended more than $2,000 on alterations and removal of violations. The total amount spent by the defendants prior to the commencement of this action in December, 1948, was more than $13,000. Substantially all of the work was completed by May, 1949, at a total cost of approximately $92,000. All of the violations were dismissed and a certificate of occupancy was issued on October 11, 1949. In addition to having the violations removed, the defendants created approximately twenty-seven new apartments and thereby substantially increased the income received from the building.

There is no undeviating rule that equity must enforce the covenants of a mortgage regardless of surrounding circumstances. The whole system of equity jurisprudence presents an excellent example of the triumph of equitable principles over strict and inflexible dogmas of the common law (Pomeroy on Equity Jurisprudence [5th ed.], § 382). The growth of the

jurisdiction of equity is founded on cases which have broken away from rigid and irrevocable enforcement of agreements. For example, it is well known that equity will not treat a mortgage upon realty as a conveyance subject to a condition, but merely as a lien (*Trimm* v. *Marsh,* 54 N. Y. 599; *Corwin* v. *Schafer,* 260 App. Div. 521, 523). Equity also refuses to recognize a covenant which surrenders the right of redemption (*Mooney* v. *Byrne,* 163 N. Y. 86; *Kirby* v. *Tricker,* 265 App. Div. 149, 150). Likewise, equity will prevent the enforcement of a forfeiture for nonperformance of conditions subsequent and refuse to give effect to a covenant for liquidated damages if it would be equivalent in substance to a penalty (*Kothe* v. *Taylor Trust,* 280 U. S. 224; Pomeroy on Equity Jurisprudence [5th ed.], § 381). Equity follows the law, but not slavishly nor at all times (*Graf* v. *Hope Bldg. Corp.,* 254 N. Y. 1, 9, *supra*).

Concededly, as the many cases cited by plaintiffs point out, acceleration and foreclosure provisions in mortgages are generally enforced as they are written. This is more particularly so in cases dealing with a default in payment of interest or an installment due on a mortgage. However, even in cases involving sums of money, less favor has been shown by courts to provisions for acceleration of a mortgage in default of a payment of taxes or assessments than in cases dealing with defaults in the payment of interest (*Noyes* v. *Anderson,* 124 N. Y. 175; *Wappler* v. *Woodbury Co.,* 246 N. Y. 152, 157; *Battim Associates* v. *L & L Estates,* 186 Misc. 141; 3 Williston on Contracts [Rev. ed.], § 769). The distinction seems to be in the fact that the punctual payment of interest affects the lender directly, whereas the provision for the payment of taxes and assessments is merely for the assurance of security. There is no doubt that even as to taxes and assessments, if the default is continuous, relief will be granted. It is the *purpose* of the covenant that constitutes the test to gauge the measure of hardship and the extent of the oppression which may result by its strict enforcement. Equity will look to the intent rather than to the form of the agreement.

In the instant action the acceleration clause contained in the mortgage extension agreement provided: " 11. That the whole of said principal sum shall become due at the option of the party of the first part, if the buildings on the said premises are not maintained in reasonably good repair or upon the failure of any owner of said premises to comply with the requirements of any Governmental Department claiming jurisdiction within three months after an order making such requirements has been issued by any such Department."

It is evident that the insertion of this provision was intended to protect the interests of the mortgagees by requiring that the building be kept in such condition as not to impair the mortgagees' financial interest therein. It may be conceded that the violations filed against the premises at one time threatened plaintiffs' investment. Plaintiffs failed, however, to exercise their prerogative to accelerate payment of the mortgage in order to protect their interest until after such time as the defendants commenced to improve the building. Only after the expenditure of substantial sums of money by defendants, which, in effect, protected and improved plaintiffs' interest in the premises, did the latter elect to invoke the acceleration clause. This determination could have been made many months prior to such election by plaintiffs, yet they did not act. Courts of equity have always refused their aid where a party has slept upon his rights and acquiesced to certain conduct for a great length of time, even though the period which has elapsed without suit or other action is less than that which is prescribed by the appropriate Statute of Limitations (*M. & C. Creditors Corp.* v. *Pratt,* 172 Misc. 695, 721; *Feldman* v. *Metropolitan Life Ins. Co.,* 259 App. Div. 123). Equity aids the vigilant, and he who seeks the aid of equity must show that he has used reasonable diligence in asserting his rights and demanding their protection.

Plaintiffs have failed to show that they acted without unreasonable delay. In the opinion of the court, to permit plaintiffs' claim to be enforced would be to foist an inequity upon the defendants, who have expended more than $90,000 to date on the premises. Even if it were conceded, *arguendo,* that plaintiffs had a cause of action at the commencement of this suit which was sufficient for the court to grant relief, the extent of such relief will be adapted to the situation existing at the time of the decree (*Wappler* v. *Woodbury Co.,* 246 N. Y. 152, *supra; Matter of Botta* v. *Tosti Constr. Co.,* 253 App. Div. 556, 558, affd. 279 N. Y. 586; *People ex rel. Lemon* v. *Elmore,* 230 App. Div. 543, 544, affd. 256 N. Y. 489). Plaintiffs' interests are more amply protected now than at any time prior to their election to foreclose the mortgage. There can be no pretense of damage or even inconvenience to them by actions taken by the defendants in curing violations and improving the building. On the other hand, if relief is afforded to plaintiffs, defendants would be irreparably damaged. The inference is inevitable that plaintiffs failed to act until the defendants commenced to improve the building.

Whether conduct is unconscionable or oppressive depends upon the facts of each particular case. Generally, it is not unconscionable to insist that the terms of a contract be enforced. It may be unconscionable, however, to insist upon adherence to the letter of an agreement where a mortgagee indicates by his conduct or silence that his inaction may turn to his own advantage. All of the circumstances presented here, the delay by plaintiffs, the removal of the violations, the improvement of the property by defendants at a substantial cost, when viewed in their cumulative effect, indicate that the strict enforcement of the acceleration covenant would approach in hardship oppression similar to a penalty.

I hold, therefore, that the actions of the plaintiffs, under the circumstances of this case, are so oppressive and unconscionable as to warrant a court of equity in refusing to extend to plaintiffs the affirmative aid sought by them (*Domus Realty Corp.* v. *3440 Realty Co.*, 179 Misc. 749, *supra*; *Ferlazzo* v. *Riley*, 278 N. Y. 289, *supra*; *6th Ave. & 24th St. Corp.* v. *Lyon*, 193 Misc. 186; *Ogden* v. *Hamer*, 268 App. Div. 751; *Loughery* v. *Catalano*, 117 Misc. 393, affd. 207 App. Div. 895).

As to the chattel mortgage on the furniture in the premises, it was conceded by plaintiffs that such mortgage was executed by the corporate defendant as mortgagor as additional security for the bond for which the mortgage on the real property had been given. The furniture is still upon the premises. No evidence has been adduced which is sufficient to warrant the court to sustain plaintiffs' contention that a default under the chattel mortgage occurred by the removal by the mortgagor of part of such furniture from the building.

Judgment is rendered for defendants dismissing the complaint upon the merits. No costs will be awarded.

Submit decree within ten days on three days' notice.

The foregoing are the facts found by me and constitute the decision of the court as required by section 440 of the Civil Practice Act.