LYRA C. BROWN, as Administratrix of the Estate of MAYO BROWN, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28838.)

LYRA C. BROWN, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28839.)

Court of Claims, February 23, 1954.

*Wilfred E. Hoffman, James J. Barrett* and *Edmund J. Hoffman* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne* of counsel), for defendant.

RYAN, J. Judgments dismissing these claims upon findings of fact and conclusions of law made by Judge GORMAN, formerly of this court, after a trial before him, were reversed by the Supreme Court, Appellate Division, Third Department (*Brown* v. *State of New York,* 279 App. Div. 958). The action by Lyra C. Brown was brought to recover damages for personal injuries sustained by her on November 23, 1947, when an automobile which her husband owned and which she, unaccompanied, was operating left the State highway known as Route 20 and went down an embankment on the southerly side. Mrs. Brown was driving westerly from Morrisville towards Cazenovia and had reached a point a mile or more east of Nelson when the accident occurred. At the time this stretch of highway was under construction by a contractor who had suspended work for the winter the day before the accident. Two lanes of concrete, which were designed for ultimate eastbound travel in a four lane highway, had been completed in the early part of November, 1947, and thereafter traffic was permitted by the State of New York to travel thereon in both directions. Work on the shoulders in this area had not been completed and the north shoulder, the one to claimant's right, was, to quote the *Per Curiam* opinion for reversal, " soft and uneven, and in places dropped several inches below the level of the concrete ". Judge GORMAN found no negligence on the part of the defendant and found that the claimant Lyra C. Brown was guilty of contributory negligence. The appellate court regarded the deci-

sion as being against the weight of the evidence on the record before it on the question of the State's negligence in the maintenance of the road at the place of accident and said, "we regard the issue of claimant-driver's own negligence as sufficiently close to warrant in the interest of justice a fresh examination into such claimant's responsibility in the causation of the accident."

There has now been another trial at which testimony was presented anew not only as to the happening of the accident but as to the condition of the highway and its shoulders, the presence or absence of signs and other details bearing upon the issue of the negligence of the State. We regard that issue as settled and the law of the case made by the Appellate Division decision. We take the higher court's admonition that this court "should feel free in thus re-examining the issue to reach the factual conclusion it regards as warranted" to refer only to the issue of Lyra Brown's contributory negligence. In any event, there is nothing in the new record different from that in the record made before Judge GORMAN to absolve the State from the charge of negligence in letting the public use an unfinished thoroughfare with its adjacent shoulders raw, soft and incomplete and with edges of concrete pavement exposed many inches deep for stretches of many linear feet at many places along it. And traffic being permitted thereon, the claimant-driver was lawfully there on the day of the accident. Being there, and it being bright daylight at the time, she had a duty to observe the exposed edges of pavement, the drop-offs, the soft condition of the shoulders, the stockpiles of dirt on the south shoulder. Signs and signals could not have provided better warning of these conditions than they themselves gave. They must have been apparent to anyone driving along Route 20 at that location that day. The fact is that Mrs. Brown observed them. She so testified.

Did Lyra Brown exercise due care? She contends that an automobile which was proceeding, as she was, from east to west, overtook her, passed her, cut in ahead of her and forced her off the pavement on to the north shoulder. We quote her testimony on direct examination, as follows:

"Q. And what was the speed of your car as you drove towards Nelson out of Morrisville? A. 30 to 35 miles an hour.

"Q. And will you tell the Court what happened? A. I was proceeding towards Cazenovia, and I think I had gone about six miles toward Nelson. I was driving on my own right-hand side of the road and a car drew up alongside of me as if to

pass me, and just as he got right opposite me he turned sharply toward my car and I pulled a little to the right to avoid a possible collision, and he started on by me, and just as he got his rear wheels about opposite my front wheels he turned sharply to the right then, and I pulled over again, and then the right front wheel of my car got very sharply off the pavement and it began to pull to the right as if the shoulder was soft, and I was applying my brake, because I thought I should stop, and I tried to hold the car to the left to keep the wheel as near as possible to the pavement because I didn't want to go off on that soft shoulder any further, because I was afraid I might upset, it seemed so soft, and then very quickly the inside of the right front wheel caught the pavement and it jumped back onto the pavement just as sharply as it had dropped off, and the car went and shot across the road and into the dirt pile, and that is all.

" Q. And is that the last you remember? A. That is the last.

" Q. And did you see this pile of dirt ahead of you before your car struck it? A. Yes. * * *

" Q. I want to get back to the scene of the accident for a moment. When this car, as you said, pulled in quite sharply to its right and you got off the shoulder, was there any traffic there, traffic either eastbound or westbound? A. Yes, there was a car coming toward me from the west traveling east.

" Q. About how far was that car from you when this car was passing you and crowding in on you? A. About 300 feet, I'd say, when I first noticed that car.

" Q. And that is a fair estimate that you recall? A. I think so, yes.

" Q. And how fast were you going at the time this car pulled up beside you to go past you in the same direction in which you were headed? A. I was going about 30 miles an hour.

" Q. You had been traveling around 30 to 35 miles an hour? A. That's right, 30 to 35, not any faster."

The automobile which was approaching Mrs. Brown from the west turned out to be that of the witness Paul R. Forster, who testified that he was traveling forty miles per hour and that Mrs. Brown's car was 400 feet away from him when it crossed the road in front of him, went through a pile of dirt on the south shoulder and went down the embankment. Forster testified that there was no car ahead of him traveling east, no cars between his car and the car that went off the road, and except for a westbound car that passed him just before he noticed Mrs. Brown's car, no other car traveling westerly. Forster

testified that what attracted his attention was the fact that Mrs. Brown's car was turning across the road in front of him. He further testified that he stopped his car within 200 feet and at a point west of the pile of dirt that claimant's car went through and that then he went down the embankment to assist Mrs. Brown. He also testified that he did not at any time see Mrs. Brown's car on the northerly shoulder of the highway.

Forster, called by the defense, was exhaustively cross-examined by claimant's counsel particularly with respect to a conversation with said counsel prior to the first trial and also with respect to testimony given by Forster on the first trial at which he was called to the stand as a witness for the claimant. This was an attempt to develop contradictions in his testimony on matters of distance, the presence of another westbound automobile and as to whether or not it was the automobile crossing his path, or the dirt flying when it hit the pile on the shoulder, which first attracted his attention. On redirect examination Forster repeated that there was no westbound car other than the one which passed him just before he noticed the Brown car crossing in his path.

On the day of the accident Forster was followed at 200 feet by the witness Fred L. Denka who saw Forster suddenly pull over and stop and jump out of his automobile. Denka stopped at a point seventy-five to eighty feet beyond Forster's car and also went down the embankment and assisted Mrs. Brown. Denka's testimony corroborates Forster's as to the place where Forster stopped. Denka did not see the Brown car along the highway and did not see any cars ahead of the Forster car. Denka's testimony was chiefly concerned with the condition of the shoulders, with the muddy tracks left on the pavement where the Brown car crossed from the north to the south and with the depth of the drop-off from the concrete to the north shoulder. There is no doubt that Mrs. Brown's automobile, or at least the right front wheel of it, dropped on to the north shoulder and travelled thereon for ten to fifteen feet, nor any doubt that when it regained the pavement the vehicle was propelled across the road and directly into the dirt pile. But, if claimant-driver was not forced on the shoulder but got there through her own carelessness or inadvertence, she has not met the burden which is upon her of establishing her freedom from contributory negligence. The scene of the accident was a straight stretch of highway greater than 2,000 feet. Accepting the testimony as to speeds of the respective vehicles, Mrs. Brown was traveling towards Forster at forty-five to fifty feet per

second, and he was traveling towards her at sixty feet per second. Claimant's counsel, in his brief, assumes that the westbound car which, according to Mrs. Brown, overtook her must have been going at fifty miles per hour or seventy-five feet per second. Under these conditions it is difficult to understand how the space of 300 to 400 feet intervening between the Brown car and the Forster car was traversed by the overtaking car without it colliding head-on with Forster. At least such a lucky miss would, we believe, have so impressed Forster, and Denka too, that they would have remembered it. Neither of them did. And nobody, including Mrs. Brown, who in the light of her above-quoted testimony must have had a good look at it, described any detail of the automobile which she said cut in on her, neither its color, make, model, size, age, or condition. We conclude that we cannot accept Mrs. Brown's version of this accident and that we must dismiss her claim for failure to establish her freedom from contributory negligence.

Pending the new trial herein, Mayo Brown, claimant-driver's husband and the owner of the automobile, died on January 7, 1953. His widow has been duly appointed his administratrix and has been substituted as claimant in Claim No. 28838. As the State of New York has been found negligent and as Mrs. Brown was not upon any of her husband's business on the day of the accident, there must be an award for the damage to his automobile in the stipulated amount of $400. (*Nichols* v. *State of New York,* 278 App. Div. 1015.)

The other items of the claim of Mayo Brown must be dismissed. They are the medical, hospital and nursing expenses incurred for Mrs. Brown and the cause of action for loss of her services and society. Mrs. Brown was employed and earning $42 per week and as there is no proof in the record that she retained her earnings for her own separate account the loss thereof would fall properly into her husband's claim. (*Birkbeck* v. *Ackroyd,* 74 N. Y. 356; *Robison* v. *Lockridge,* 230 App. Div. 389. See, also, *Blaechinska* v. *Howard Mission,* 130 N. Y. 497; *Marks* v. *Marks,* 250 App. Div. 289, 291, and *MacFadden* v. *MacFadden,* 171 Misc. 482, affd. 257 App. Div. 938, affd. 286 N. Y. 617.)

If our decision on the issue of Mrs. Brown's freedom from contributory negligence were contrary to what it is, an interesting question with respect to her husband's loss of consortium would present itself. Prior to the enactment of section 119 of the Decedent Estate Law (L. 1935, ch. 795), the cause of action would, we believe, have abated. (*Bianco* v. *Sun Oil Co.,* 143

Misc. 764, affd. 224 App. Div. 817.) Since that enactment such a cause apparently survives. The amount of recovery would be limited by the fact of the husband's death in 1953. (*Sider v. General Elec. Co.*, 238 N. Y. 64.)

A formal decision setting forth findings of fact and conclusions of law is filed herewith and the court has adopted or refused proposed findings and conclusions submitted by the parties as indicated thereon.